844 P.2d 617

**STATE of Arizona, Petitioner,**

v.

**The Honorable Lina RODRIGUEZ, Judge of the Superior Court of the State of Arizona, In and For the County of Pima, Respondent,**

and

**Richard L. HESTAD, Real Party in Interest.**

**No. 2 CA–SA 92–0060.**

Court of Appeals of Arizona, Division 2, Department A.

June 11, 1992.

Review Denied Feb. 2, 1993.

Frederick S. Dean, Tucson City Atty. by
R. William Call and Nancy Elizabeth Dean,
Tucson, for petitioner.

D. Jesse Smith, Tucson, for real party in
interest.

## OPINION

LIVERMORE, Chief Judge.

This special action was taken from the
order of the superior court affirming a city
magistrate's order suppressing the results
of field sobriety and intoxilyzer tests con-
ducted in connection with the real party in
interest's arrest for driving under the influ-
ence of alcohol and with an alcohol concen-
tration of .10 or more.   A.R.S. § 28–
692(A)(1) and (2).   Because the issues pre-
sented are purely legal, involving no dis-
puted facts, and because they are of state-
wide importance, we accept jurisdiction.
*University of Arizona Health Sciences
Center v. Superior Court*, 136 Ariz. 579,
667 P.2d 1294 (1983).

On August 3, 1991, at 3:06 a.m., the real party in interest (Hestad) was stopped by Tucson Police Officer Dreyer for a traffic violation. Hestad was asked to perform certain field sobriety tests including standing on one leg while counting out loud from one to 30 and writing the letters of the alphabet from A to Z. At 3:15, Hestad was placed under arrest and given *Miranda*[1] warnings. He was then advised under the "Implied Consent Law," A.R.S. § 28–691, and elected to submit to breath tests rather than a blood test. He was also advised of his right to an independent test at his own expense.

Using the Intoxilyzer Model 5000 for the replicate breath tests,[2] Hestad was first tested after a 20–minute observation period at 3:40 a.m. with a result of .148. Six minutes later, he was again tested with a result of .125. Officer Dreyer testified that he had been instructed by his superior that "the two tests have to be within .020 of each other." Accordingly, at 3:51, he tested Hestad a third time with a result of .130.

Hestad filed a motion in city court to suppress the results of both the intoxilyzer and the field sobriety tests. The magistrate granted the motion with respect to the intoxilyzer on three grounds. First, he found that, contrary to the requirement of A.R.S. § 28–696, the Department of Health Services had not adopted regulations governing the administration of replicate breath tests. Concluding that "fairness" required that the same standards and methods be applied to everyone, the magistrate found a violation of due process. Second, he found that the first two test results were inadmissible under A.R.S. § 28–692.-03(A)(3) because they were not within .02 alcohol concentration of each other and there was no authority for additional tests. Third, he concluded that Hestad's right to gather exculpatory evidence was violated because he was not provided with a breath sample.

The motion to suppress the results of the field sobriety tests was also granted, although the reasons do not appear in the record before us. From the arguments made by Hestad, we infer the magistrate's conclusion that the test results were testimonial in nature, that they were obtained while Hestad was in custody but not "Mirandized," and that they were therefore inadmissible.

The state appealed to the superior court. The respondent judge affirmed the suppression of the intoxilyzer results on the ground that the first two results were inadmissible because the difference was greater than .02 percent and "the statute and rules did not envision that a law enforcement officer could continue to obtain B.A.C., ad infinitum, until the results were within .02 of each other." She did not address the other grounds relied on by the magistrate. She further concluded that the magistrate did not abuse his discretion in concluding that Hestad was in custody and affirmed the suppression of the field sobriety tests but only insofar as they reflected "mistakes" and not with respect to "physical use of the writings...." Although the minute entry is less than clear, it appears that the respondent concluded that oral or written errors in sequence were testimonial in nature and therefore inadmissible under *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). The manner in which the letters or numbers were written or spoken, on the other hand, was not testimonial, and therefore admissible. This special action followed.

## I. THE INTOXILYZER RESULTS

A review of the relevant statutory provisions is necessary to our decision in this

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. "Replicate breath testing is a series of two consecutive breath tests spaced by air blanks to flush out the sample chambers. A reading is taken of each of the two samples and the variance between the two samples must be within .02 percent for the test to be valid." *State ex rel. Dean v. City Court,* 163 Ariz. 510, 511 n. 2, 789 P.2d 180, 181 n. 2 (1990).

case. As part of the legislative effort to remove drunk drivers from our highways, a number of statutes have been enacted and amended which both increase the penalties on offenders and ease the state's burden to prove intoxication. Among the latter is A.R.S. § 28–692.03, which pertains in part to the admission of breath test results in DUI prosecutions. Because it is central to our disposition of the issues presented by this case, we quote it in full:

A. The results of a breath test administered for the purpose of determining a person's blood alcohol level are admissible as evidence in any trial, action or proceeding upon establishing the following foundational requirements:

1. The test was performed using a quantitative breath testing device approved by the department of health services. A properly authenticated certification by the department of health services is sufficient to establish this requirement.

2. The operator who conducted the test possessed a valid permit issued by the department of health services to operate the device used to conduct the test.

3. *Duplicate tests were administered and the tests results were within 0.02 alcohol concentration of each other or* an operator observed the person charged with the violation for twenty minutes immediately preceding the administration of the test.

4. The operator who conducted the test followed an operational checklist approved by the department of health services for the operation of the device used to conduct the test. The testimony of the operator is sufficient to establish this requirement.

5. The device used to conduct the test was in proper operating condition. Records of periodic maintenance which show that the device was in proper operating condition at a time before and after the test are admissible in any proceeding as prima facie evidence that the device was in proper operating condition at the time of the test. Such records are public records.

B. Compliance with subsection A is the only requirement for the admission in evidence of A breath test result.

C. The director of the department of health services shall adopt rules prescribing methods and procedures for the administration of breath tests to determine alcohol concentration. These rules shall include:

1. The approval of quantitative breath testing devices.

2. Procedures for ensuring the accuracy of results obtained from approved breath testing devices.

3. Qualifications for persons who conduct breath tests.

4. Qualifications for persons who instruct others in the operation of breath testing devices.

D. The director of the department of health services shall issue permits to operators who have received approved instruction and have demonstrated their ability to accurately operate an approved breath testing device. The director of the department of health services may revoke the permit of a person who fails to operate a breath testing device according to the rules established by the director.

(Emphasis supplied.)

Several points should be noted with respect to this statute. First, the requirement in subsection (C) that the director of the Department of Health Services adopt rules governing breath tests was in effect as part of the original statute prior to the 1990 amendment which added the underscored portion of the statute pertaining to replicate testing. Pursuant to the legislative directive, the department has in fact adopted such regulations. *See* A.A.R.R. R9–14–401 through R9–14–412, and specifically R9–14–405 governing testing procedures, which establishes quality assurance criteria "[t]o promote the accuracy of test results obtained from approved breath testing or collection devices...." Although Hestad relies on A.R.S. § 28–696, which was adopted in 1990 as part of the same bill which added the provisions regarding replicate testing, as support for his conten-

tion that the department has failed to enact required regulations, we believe that the department's responsibility in this specific area is governed by the more specific provisions of § 28–692.03(C).

Second, the purpose of subsections (A) and (B) is to relieve the state of the necessity and expense of providing expert testimony as foundation for the admission of breath test results. *See State ex rel. Collins v. Seidel,* 142 Ariz. 587, 691 P.2d 678 (1984). That adoption of regulations by the department is not critical to the admission of breath test results under subsection (A) is made clear by the fact that subsection (B) was added as a later amendment in an attempt "to relieve the state of the burden of promulgating standards by amending the statute to condition admissibility on compliance only with [subs]ection A." *Seidel,* 142 Ariz. at 589 n. 3, 691 P.2d at 680 n. 3.

■ Third, as *Seidel* makes clear, meeting the criteria of subsection (A) is not the exclusive means of admitting breath test results into evidence. Either the state or a defendant may have them admitted upon compliance with the rules of evidence pertaining to scientific evidence. Ariz.R.Evid. 701–706, 17A A.R.S.; *Seidel, supra.*

From the foregoing, it is apparent that the respondent erred in affirming the suppression of the first and second test results solely on the ground that the state had not met the requirements of § 28–692.03(A). Provided that the state can meet the foundational requirements under the rules of evidence, the test results are admissible. *Seidel, supra.*

■ The respondent also erred in concluding that the result of the third test was inadmissible because there is no authority for more than two tests. The statute speaks in terms of "tests," without limitation. As the criminalist testifying at the hearing on the motion to suppress made clear, the purpose of the statutory requirement that two tests be within .02 percent of each other in order to be admissible is to ensure that no mouth alcohol is present which would artificially inflate the result. *See State ex rel. Dean v. City Court, supra.* Because a person may burp or vomit during the testing period, and thereby produce alcohol in the mouth, multiple tests may reasonably be contemplated. *Id.* We thus interpret the statute not as a limitation on the number of tests which may be administered but only as establishing a prerequisite to admissibility thereunder that two consecutive test results be within .02 percent of each other. While the administration of tests "ad infinitum" may raise other concerns, they are not present here. That more than two were administered may raise questions concerning the proper functioning of the machine, but this issue is separately addressed in subsection (A)(5) and is not alone a ground for suppression. Accordingly, we conclude that, assuming the other requirements of subsection (A) were met, the second and third test results are admissible. If the state can meet the requisite evidentiary foundational requirements, the results of the first test are also admissible, or Hestad may use them to question the validity of the second and third test results.

■ Because we conclude that the respondent erred in affirming the suppression of the intoxilyzer results, we must address the other grounds relied on by the magistrate. We have already concluded that the department has adopted the regulations contemplated by subsection (C) of § 28–692.03. Thus, to the extent that they are statutorily required, uniform standards exist. The only question here is whether due process requires that the department adopt a uniform regulation governing the number of tests which may be administered to a suspect or, put conversely, whether the admission of evidence resulting from multiple tests taken in the absence of a uniform regulation violates due process. We are aware of no authority which would support the conclusion that due process requires that evidence from multiple tests be excluded in all cases unless and until a uniform regulation has been adopted. Instead, we believe, each case must be analyzed on its own facts to determine whether the methods used "offend those canons of decency and fairness which express the

notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." *Malinski v. New York*, 324 U.S. 401, 416–17, 65 S.Ct. 781, 789, 89 L.Ed. 1029, 1039 (1945). It requires no discussion to conclude that the administration of three breath tests under the circumstances presented by this case does not shock the conscience. *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). Accordingly, the magistrate erred in suppressing the test results on due process grounds.

■ Finally, the magistrate suppressed the test results because the replicate test procedure does not provide a suspect with his own sample and thereby violates his right to gather exculpatory evidence. The magistrate's decision in this case occurred a year and a half after the supreme court's decision in *State ex rel. Dean v. City Court, supra*, rejecting this argument, and is clearly erroneous.

■ Hestad also argues that the results should be suppressed because, after the first test results were found to be more than .02 percent apart, he was never advised that the machine might be malfunctioning and that he should consider obtaining an independent test, nor did the officer take him to another machine that was functioning properly. He cites no pertinent authority for this proposition, and we find none. His argument is premised on the assumption that the intoxilyzer was malfunctioning. Officer Dreyer testified to the contrary, and Hestad introduced no evidence to support this assumption. Moreover, because we have concluded that A.R.S. § 28–692.03 does not limit the number of breath tests to two, there was no need to readvise Hestad of his right to an independent test. Finally, if the intoxilyzer was indeed malfunctioning, this fact alone, if proved, would preclude admission of the results under the statute or otherwise. The fact that more than two tests were given, however, did not give rise to any obligation to readvise Hestad of his right to an independent test.

In sum, we hold that the magistrate erred in suppressing the results of the replicate breath test on the grounds stated.

## II. THE FIELD SOBRIETY TESTS

■ The respondent judge also affirmed the suppression of the field sobriety tests, but narrowed the scope of suppression, it appears, to errors of omission or sequence. In so doing, the respondent relied on the United States Supreme Court's decision in *Pennsylvania v. Muniz*, 496 U.S. 582, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990). The respondent also found no "abuse of discretion" in the magistrate's finding that Hestad was in custody for purposes of *Miranda v. Arizona, supra*, at the time the field sobriety tests were administered. The decision in *Muniz* hinges on such a finding. In this case, however, there is no evidence to support that finding. The only evidence was Officer Dreyer's testimony that Hestad was stopped at 3:06, that he was arrested and given *Miranda* warnings at 3:15, and that in between, two field sobriety tests were conducted. Rather than *Muniz*, this case is governed by *Pennsylvania v. Bruder*, 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988), where under almost identical circumstances the Court held that Bruder was not in custody for purposes of *Miranda*. Accordingly, the magistrate erred in suppressing the results of the field sobriety tests.

## III. CONCLUSION

Because the magistrate erred as a matter of law in suppressing the intoxilyzer test and field sobriety test results, his order, and the order of the respondent judge affirming that order, are vacated. The cause is remanded for further proceedings.

LACAGNINA, P.J., and HOWARD, J., concur.