857 P.2d 1314

**Michael Edward SCHADE, Petitioner/Appellee,**

**v.**

**The DEPARTMENT OF TRANSPORTATION, Respondent/Appellant.**

No. 2 CA–CV 92–0126.

Court of Appeals of Arizona, Division 2, Department A.

April 6, 1993.

Review Denied Sept. 21, 1993.

Willoughby, Evans, Riggs & Farnsworth by J. R. Evans III, Willcox, for petitioner/appellee.

Grant Woods, Atty. Gen. by Richard Kamps, Phoenix, for respondent/appellant.

## OPINION

ESPINOSA, Judge.

The state appeals from a superior court order reversing the Department of Transportation's (DOT) suspension of appellee Michael Schade's driver's license for refusing to submit to a requested test, after he had already submitted to a breath test to determine his blood alcohol content (BAC). We reverse the superior court and reinstate the ruling of the DOT hearing officer.

The evidence at Schade's license suspension hearing established that on July 31, 1991, Safford, Arizona police and fire departments responded to a vehicular fire at a town intersection. Officers Hinton and Fox separately interviewed bystanders who had pulled Schade from his car, where he was reportedly found stuporous, strapped in his seat belt with his foot depressing the accelerator, causing the engine to race. After the fire was extinguished, Officer Hinton found two small containers of a substance he suspected was marijuana in the middle console of the front seat.

Meanwhile, Officer Fox had approached Schade, who was standing up, leaning on the door of a bystander's vehicle, appearing confused and disoriented. When the officer asked if he were all right, Schade said he was fine but that he did not know what happened or how his car caught fire. The officer noticed a strong odor of alcohol on Schade's breath, and "what appeared to be vomit on his shirt." When asked if he had been drinking, Schade replied that he had just come from Saddleman's, a local bar. Fox then administered field sobriety tests.

After Schade failed these tests, Officer Fox arrested him and transported him to the Graham County Jail. Upon arrival, the officer "heard the noise of [Schade's] head hitting the side window of [the] patrol vehicle," and had to awaken him to escort him inside because he was unconscious in the back seat. Officer Fox observed Schade for twenty minutes, read him his *Miranda* rights,[1] and advised him under Arizona's "implied consent law," A.R.S. § 28–691. Schade performed a requested Intoxilyzer test which indicated a BAC of .148 per cent. Fox then asked Schade to provide a urine sample. Schade responded with several expletives, stating that he had already taken a breath test. When the officer asked him again, he refused.

Based on Officer Fox's affidavit of refusal, Schade's driver's license was suspended pursuant to § 28–691. The Motor Vehicle Division of DOT affirmed the suspension after a hearing, and Schade petitioned for review. The superior court vacated the suspension on the grounds that there was no justification for the officer's requesting the second test, and that Schade had fulfilled the requirements of the implied consent law. This appeal by the state followed.

▪ When reviewing an administrative decision, courts are limited to determining whether the administrative action was illegal, arbitrary, capricious, or involved an abuse of discretion. *Ontiveros v. Ariz. Dept. of Trans.*, 151 Ariz. 542, 729 P.2d 346 (App.1986). Because the hearing officer and the superior court based their decisions on legal conclusions or the legal effects of facts, we review both decisions for legal error, and are free to draw our own conclusions regarding the law. *See Sanders v. Novick*, 151 Ariz. 606, 729 P.2d 960 (App. 1986); *Eshelman v. Blubaum*, 114 Ariz. 376, 560 P.2d 1283 (App.1977).

The state argues that once an officer has reasonable grounds to believe a person has been driving or in control of a vehicle while under the influence of liquor or drugs, § 28–691 expressly allows the officer to

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

request a second test for intoxicants, whether or not there is further justification for such request. Alternatively, the state urges that if further grounds are necessary under the statute, they were present in this case.

Section 28–691 provides in pertinent part:

A. Any person who operates a motor vehicle within this state gives consent ... to a test or tests of his blood, breath, urine or other bodily substance for the purpose of determining alcohol concentration or drug content if arrested for any offense arising out of acts alleged to have been committed in violation of this chapter ... while the person was driving or in actual physical control of a motor vehicle while under the influence of intoxicating liquor or drugs. The test or tests chosen by the law enforcement agency shall be administered at the direction of a law enforcement officer having reasonable grounds to believe the person to have been driving or in actual physical control of a motor vehicle within this state while under the influence of intoxicating liquor or drugs.

B. Following an arrest a violator shall be requested to submit to and successfully complete any test or tests prescribed by subsection A of this section, and if the violator refuses he shall be informed that his license or permit to drive will be suspended or denied for twelve months unless he expressly agrees to submit to and successfully completes the test or tests. A failure to expressly agree to the test or successfully complete the test is deemed a refusal....

Pointing to the disjunctive language in the last sentence of subsection A, Schade argues that the consent statute should be narrowly construed to require an arrest for *either* driving under the influence of intoxicating liquor *or* driving under the influence of drugs, and that "in each instance the implied consent is limited to [a] test or tests on one bodily substance—breath, blood, urine, or other bodily substance." Schade cites a Utah decision, *Ringwood v. Utah*, 8 Utah 2d 287, 333 P.2d 943 (1959), which interpreted a statute similar to an earlier version of the Arizona statute. That case is not helpful here because the Utah statute did not address driving under the influence of drugs or contain the language "test or tests" found in our statute. Schade also contends that his theory is consistent with the 1990 amendments to § 28–692 pertaining to replicate breath testing.

■■■ The purpose of the implied consent law is to remove from Arizona highways those drivers who may be a menace to themselves and others because of intoxication, to assure prompt revocation of a dangerous driver's license, and to increase the certainty that an impaired driver is penalized even if he or she refuses to provide evidence of intoxication. *Sherrill v. Dept. of Trans.*, 165 Ariz. 495, 799 P.2d 836 (1990); *Campbell v. Superior Court*, 106 Ariz. 542, 479 P.2d 685 (1971); *see also* Minutes of the Committee on Judiciary, Arizona Senate, April 7, 1987, H.B. 2273, at 14. Schade's breath test established that he was presumptively intoxicated under § 28–692(A)(2). However, § 28–692(A)(1) makes it unlawful for a person to be in actual physical control of a vehicle within this state while "impaired to the slightest degree" by liquor, drugs, vapor-releasing substances, or any combination of these intoxicants. The offense can be established in any of four ways. The Intoxilyzer test provided the basis for a citation under both A.R.S. § 28–692(A)(1) and (A)(2). Had a urinalysis test shown the presence of drugs or metabolites, Schade could also have been cited under A.R.S. § 28–692(A)(3).

Schade offers no relevant authority for the principle that law enforcement officials are initially restricted to a single means of establishing the offense. Further, it is doubtful that the statute contemplates such a limitation which would effectively require police to correctly identify the intoxicant or combination of intoxicants prior to arrest and before administering any tests. *See e.g. State v. Rodriguez*, 173 Ariz. 450, 844 P.2d 617 (App.1992) (upholding multiple tests under A.R.S. § 28–692.03 and noting that Arizona's DUI statutes in-

clude as their purpose easing the state's burden in proving intoxication). However, we stop short of resolving this issue under the specific facts of this case because, even assuming that the statute requires a particularized basis for requesting an additional test, the record reflects that Officer Fox had such a basis.

 An administrative decision under the implied consent law may not be set aside where competent evidence supports it, *Sherrill v. Dept. of Trans., supra,* and the superior court may not substitute its judgment for that of the agency involved. *Owen v. Creedon,* 170 Ariz. 511, 826 P.2d 808 (App.1992). That is the case here, notwithstanding alleged errors by the hearing officer.[2] Officer Fox testified that he asked for the second test because his experience led him to believe that the reading of .148 per cent was not high enough to explain Schade's condition. The officer had observed Schade from the time of his arrest until he took the breath test. Within this period he conducted field sobriety tests during which, for example, he had to stop Schade after seven repetitions of a test he was instructed to perform three times. Schade later passed out while being taken to the police station. Furthermore, Fox had learned that suspected marijuana was found in Schade's car. Thus the superior court's conclusion that "the hearing officer had no basis for finding that the request was reasonable" is clearly contradicted by the record.

 Under § 28–691(A), the choice of test or tests is at the discretion of a law enforcement officer with reasonable grounds to believe that a person was in control of a vehicle while under the influence of alcohol or drugs. *Cf. Rodriguez, supra,* (A.R.S. § 28–692.03 "speaks in terms of 'tests' without limitation"). The facts here do not warrant second-guessing

that discretion, notwithstanding the specter raised by Schade of arrestees' being subjected to "endless testing of their bodily substances." As noted in *Rodriguez,* "[w]hile the administration of tests 'ad infinitum' may raise other concerns, they are not present here." In this case, Officer Fox requested one additional test and had reasonable grounds for doing so, a procedure we find well within the ambit of the statute. We therefore reverse the decision of the superior court and reinstate the ruling of the Department of Transportation.

LIVERMORE, C.J., and LACAGNINA, P.J., concur.

---

2. Schade asserts that the hearing officer improperly limited the scope of the hearing and erroneously precluded questions pertaining to Officer Fox's grounds for requesting the drug test, as well as testimony concerning toxic fumes. As a result, Schade was unable to introduce evidence that his behavior was influenced by smoke inhalation rather than drugs. We

agree that the proceedings were unduly restricted. *See* A.R.S. § 28–691(G). However, since Schade's contentions on appeal, as well as his proffers and arguments at the hearing, do not contradict the officer's testimony or motive in requesting the urine sample, we conclude that any error was harmless. A.R.S. § 13–3987.