965 P.2d 31

John P. CARETTO, Plaintiff–Appellee,

v.

**ARIZONA DEPARTMENT OF TRANS-PORTATION and Patricia J. d'Entremont, Hearing Officer, Defendants–Appellants.**

**No. 1 CA–CV 97–0318.**

Court of Appeals of Arizona,
Division 1, Department C.

Feb. 17, 1998.

Review Denied Oct. 20, 1998.

Grant Woods, Attorney General by Peter C. Gulatto, Assistant Attorney General, Phoenix, for Defendants-Appellants.

Toles & Associates, P.C. by Richard M. Gerry, Phoenix, for Plaintiff-Appellee.

SULT, Judge.

¶ 1 Pursuant to the implied consent provisions of Arizona Revised Statutes Annotated ("A.R.S.") section 28–691(B) (Supp.1997), an administrative law judge ("ALJ") suspended the driver's license of John P. Caretto for one year for refusing to submit to the second of two breath tests administered during duplicate testing. On appeal to the superior court, the ALJ's order was vacated and the superior court granted judgment in Caretto's favor. The Arizona Department of Transportation ("ADOT") has appealed the decision of the superior court. For the following reasons, we reverse.

## BACKGROUND

¶ 2 On November 11, 1995, Department of Public Safety Officer Sayers arrested Caretto for driving under the influence of alcohol. · Sayers transported Caretto to the police station where Sayers intended to conduct

duplicate breath testing.[1] Sayers began, however, by conducting an "observation" period for approximately twenty minutes, and then requesting that Caretto submit to a breath test. Sayers also read Caretto several warnings, including a warning that a refusal to "submit to" or "successfully complete the specified test(s)" would result in a one-year suspension of his driver's license. Caretto submitted to the first breath test, which revealed that his blood alcohol concentration ("BAC") level was .145%, well above the legal limit in Arizona.

¶ 3 To complete the duplicate testing, Sayers waited approximately five minutes before attempting to administer the second breath test. However, Caretto would not submit to a second test and instead asked to speak to an attorney. Sayers responded that he needed a name and number to contact the attorney, but Caretto remained silent. Sayers then reread several warnings to Caretto, informing him that he was not entitled to any further delay in taking the tests "for any reason" and that further delay would be considered as a refusal to submit. The officer also explained that the worst that could happen if Caretto submitted to the test would be a three-month driver's license suspension for a BAC over the legal limit, while a refusal to submit would result in a one-year suspension. When Caretto steadfastly declined to be further tested, the officer found a refusal to submit.

¶ 4 Subsequently, Caretto was notified that his license would be suspended for one year, and he requested an administrative hearing. In the interim, a justice of the peace found the BAC result admissible as evidence in a separate criminal DUI proceeding against Caretto. At the conclusion of the administrative hearing, the ALJ found a refusal to submit and ordered that Caretto's license be suspended for one year.

¶ 5 Caretto sought review by the Maricopa County Superior Court, which vacated the

ALJ's order and granted judgment to Caretto for the following reasons:

1. Having submitted to one valid breath test, the results of which were used to convict [Caretto] in the criminal case, A.R.S. § 28–691 does not authorize license suspension for refusal to supply a breath sample for a subsequent breath test requested by the officer. *See Sherrill v. ADOT,* 165 Ariz. 495, 502, 799 P.2d 836, 843 (1990).

2. Having requested to contact an attorney between the first valid test and the second test he was deemed to have refused, the officers were required to clearly inform [Caretto] that he had no right to consult an attorney before submitting to the second test. *Gaunt v. MVD,* 136 Ariz. 424, 426, 666 P.2d 524, 526 (App.1983). They failed to do so.

3. Fairness requires that the officer who insisted on the second breath sample advise [Caretto] that his license can and will be suspended for failure to take the second test notwithstanding his cooperation in completing the first test. [Caretto] was not so advised and could well have believed that he had already discharged his implied consent duty, as well he had.

ADOT timely appealed.

### ISSUES

¶ 6 When the state seeks to suspend a driver's license for a refusal to submit to testing, it must prove by a preponderance of the evidence that a law enforcement officer had reasonable grounds to believe the licensee was controlling an automobile while under the influence of alcohol, that the licensee was placed under arrest, that the licensee refused to submit to a test to determine his BAC, and that the licensee was informed of the consequences of refusing to submit to such a test. *Sherrill v. Department of Transp.,* 165 Ariz. 495, 497–98, 799 P.2d 836, 838–39 (1990). In this case, the latter two elements are in dispute, with ADOT assert-

1. "Duplicate test" is defined as two consecutive breath tests conducted after a deprivation period. Arizona Administrative Code R9–14–401(11). The fifteen-minute "deprivation" period is somewhat different from and has fewer requirements than the twenty-minute "observation" period required to validate a single breath test. *Ricard v. Department of Transp.,* 187 Ariz. 633, 637, 931 P.2d 1143, 1147 (App.1997).

**300**

ing that the ALJ was correct in finding that Caretto refused to submit to breath testing and received adequate notice of the consequences of his refusal, and that the superior court erred in finding to the contrary.[2]

## ANALYSIS

### I. Standard of Review

▋ ¶ 7 When reviewing an ALJ's decision under the implied consent law, the superior court is limited to determining whether the ALJ's decision was "arbitrary, capricious, or an abuse of discretion." *Edwards v. Department of Transp.*, 176 Ariz. 137, 140, 859 P.2d 760, 763 (App.1993). The superior court must affirm administrative decisions that are supported by "competent evidence." *Id.* In turn, we review the superior court's decision "to determine whether the record contains evidence to support the judgment." *Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Products, Inc.*, 167 Ariz. 383, 386, 807 P.2d 1119, 1122 (App. 1990). Our review necessarily involves reaching the underlying issues of whether competent evidence supports the ALJ's decision and whether the ALJ's action was "illegal, arbitrary, capricious, or involved an abuse of discretion." *Id.*

### II. Refusal to Submit

¶ 8 In its findings (1) and (2), the superior court set forth separate bases for its conclusion that Caretto did not refuse to submit to testing. In finding (1), the court decided that the state's use of the test result in a concurrent criminal proceeding for DUI precluded a finding of refusal. In finding (2), the court determined that the officer failed to clearly inform Caretto that he had no right to consult an attorney before deciding whether to take the second test. We address each finding in turn.

#### A. Use of Test Result in Criminal Proceedings

¶ 9 Caretto first argues that the superior court's finding (1) was mandated by *Sherrill.*

Caretto asserts that *Sherrill* stands for the proposition that whenever the state successfully introduces a BAC test result in a companion criminal prosecution for DUI, the state is *per se* prohibited from seeking an implied consent suspension for a refusal related to that test. While the superior court apparently agreed with this proposition, we do not read *Sherrill* so broadly.

¶ 10 *Sherrill* involved a DUI suspect who attempted to cooperate and follow instructions in supplying a breath sample. 165 Ariz. at 496, 799 P.2d at 837. However, the suspect provided a "deficient sample" in her first attempt at breathing into the machine, and the result was a BAC reading of 0.0%. *Id.* The suspect again provided a deficient sample in her second attempt, but a BAC reading of .295% resulted. *Id.* The officer construed this effort as a failure to "successfully complete" the test. *Id.*

▋ ¶ 11 *Sherrill* held that the successful use of the deficient sample in a criminal proceeding against the suspect, combined with evidence of the suspect's cooperation and a lack of sufficient proof that the suspect caused the deficient sample, precluded a finding of refusal for a failure to successfully complete the test. *Id.* at 503, 799 P.2d at 844. However, *Sherrill* expressly rejected any notion that the admission of a test result in a criminal proceeding, standing alone, automatically precluded an implied consent suspension:

> In the absence of any other evidence of ... resistance to the test, indicated by either verbal or nonverbal willful noncooperation, we believe the fact that the prosecution utilized a test result ... to obtain a criminal DUI conviction, is a relevant factor in determining whether [the suspect] "refused" to take the test. *Such a factor need not preclude a finding of refusal, however, if other evidence in the record satisfies the state's burden of proof.*

*Id.* at 498–99, 799 P.2d at 839–40 (emphasis added).

---

**2.** Both parties present arguments regarding whether the use of the first valid test for an administrative per se suspension precludes an implied consent suspension for refusing the sec-ond test. As this issue was not addressed by the superior court and did not form the basis for any of its conclusions, we decline to consider it.

¶ 12   In this case, there is "other evidence" which satisfies the state's burden. When Sayers requested that Caretto take the second test, Caretto instead asked to speak to his attorney. When the officer asked for the attorney's name and address, Caretto unaccountably remained silent. The officer then reread the implied consent admonitions and offered the intoxilyzer tube to Caretto, who declined to take it. Under these circumstances, the ALJ did not act arbitrarily or abuse her discretion in finding a refusal, and nothing in *Sherrill* precludes such a finding.

¶ 13   Caretto seeks alternatively to justify the superior court's finding (1) by arguing that administration of the second test was statutorily unauthorized and that a suspension cannot be based on a refusal of an unauthorized test, citing *Ricard v. Department of Transp.*, 187 Ariz. 633, 931 P.2d 1143 (App.1997). In support of this argument, Caretto first points out that A.R.S. section 28–695(A)(3) (Supp.1997), which provides for admissibility of BAC results obtained either through duplicate breath tests or a single breath test preceded by a twenty-minute observation period, is phrased in the disjunctive. Caretto next observes that his first breath test had been preceded by a twenty-minute observation period and was therefore a valid single test. Caretto then argues that, in these circumstances, section 28–695(A)(3) should be construed to permit administration of only one of the breath testing methods described therein. Applying this interpretation to his case, Caretto concludes that since he gave one valid breath sample, no further testing was authorized pursuant to *Ricard.*

¶ 14   *Ricard* involved a suspect who attempted to skew breath results by belching and smacking his lips, notwithstanding an admonition by the testing officer not to do so. *Id.* at 634–35, 931 P.2d at 1144–45. The *Ricard* court found that the suspect's offending behavior could not have affected the test results and, therefore, prohibition of the behavior was not necessary to the testing process. *Id.* at 638, 931 P.2d at 1148. Consequently, the court found the prohibition was not authorized and a violation of the prohibi-

tion could not support a finding of refusal. *Id.* at 638–39, 931 P.2d at 1148–49.

¶ 15   *Ricard* essentially holds that procedures imposed by a testing officer that are not part of the established protocol for the test cannot form the basis for a refusal when the suspect does not comply with them. The *Ricard* principle would apply to this case only if administration of the second test was not authorized by the DUI statutes. Caretto not only asserts that the disjunctive phrasing of section 28–695(A)(3) impliedly precludes more than one breath test, he also argues that there is no other statute or regulation which would authorize use of both methods. This assertion requires that we examine section 28–695(A)(3) as well as review other potentially applicable DUI statutes.

¶ 16   We begin with section 28–695(A), which provides that breath test results are admissible in evidence upon establishing the foundational requirements prescribed therein. As previously noted, section 28–695(A)(3) indicates that either duplicate breath testing with BAC results that are within .02 alcohol concentration of each other *or* a single test preceded by a twenty-minute observation period will satisfy the standard for admissibility.

¶ 17   While it is true that this subsection is phrased in the disjunctive, the statute overall is directed at the foundational prerequisites for admissibility, not at the question of what or how many tests are authorized. In the process of statutory construction, we would not seek legislative intent regarding what tests are authorized in a statute unrelated to that subject. *State v. Anway,* 87 Ariz. 206, 209, 349 P.2d 774, 776 (1960) (holding that courts will not stretch a statute to matters not falling within its express provisions). Consequently, we decline to read the disjunctive phrasing in subsection (A)(3) as a limitation on a testing officer's authorization to administer the breath testing methods described therein.

¶ 18   The statute directly dealing with an officer's authorization for seeking testing is section 28–691(B). This section authorizes a request for submission to "any test or tests" prescribed in subsection (A) of the same

statute. Subsection (A), which is the implied consent provision, directs that a person operating a motor vehicle is deemed to give consent to a "test or tests." These passages, which are part of a larger and comprehensive testing protocol established by the legislature, certainly indicate that the legislature contemplated that an officer might have occasion to administer more than one test to a suspect. *Cf. State v. Rodriguez*, 173 Ariz. 450, 454, 844 P.2d 617, 621 (App.1992) (administering three tests during duplicate testing in order to obtain results within acceptable parameters held permissible under statute authorizing "tests").

¶ 19 It is true that subsection (A)'s reference to multiple tests is followed by a specification that the tests may be of blood, breath or urine. However, we do not believe that this language should be read to authorize an additional test only if it is of a different bodily product than the first test. In construing statutes, we attempt to ascertain and give effect to the legislature's intent behind the statutes. *State v. Moerman*, 182 Ariz. 255, 260, 895 P.2d 1018, 1023 (App. 1994). Among the legislature's purposes in enacting the DUI statutes are removing impaired drivers from Arizona's highways, easing the state's burden of proving intoxication, and increasing the certainty that impaired drivers are penalized even if they refuse testing. *Schade v. Department of Transp.*, 175 Ariz. 460, 462–63, 857 P.2d 1314, 1316–17 (App.1993). In furtherance of these purposes, the legislature has imposed on law enforcement officers the duty to obtain BAC evidence from suspected impaired drivers.

¶ 20 In discharging this duty, an officer's primary concerns must be to obtain evidence that is accurate and obtain it in such a way that it is admissible in court. To accomplish these objectives, the officer must have some flexibility in determining how best to collect such evidence. By construing sections 28–691(A) and (B) to authorize more than one type of breath test, we provide the necessary flexibility and, at the same time, further the legislature's legitimate purposes. A contrary conclusion which required an officer to choose between the tests described in section 28–695(A)(3) would enhance neither the accuracy nor the admissibility of BAC results in court. In fact, an officer would be placed in the position of guessing at his peril which of the two methods would likely be more accurate and less subject to attack from a defense expert, as well as which method would more likely be accepted in evidence by a judge. Such a result would tend to frustrate the legislature's goals and could hardly have been intended by that body.[3]

¶ 21 We therefore conclude that the officer here had the authority to request that Caretto submit to the second breath test. We further conclude that Caretto's refusal to perform the test justifies an implied consent suspension. Because the second test was authorized, we find *Ricard's* condemnation of non-authorized procedures irrelevant and Caretto's reliance on *Ricard* misplaced.[4]

### B. Clarification of Caretto's Right to an Attorney

¶ 22 The state also disputes the superior court's finding (2) that, pursuant to *Gaunt v. Motor Vehicle Div.*, 136 Ariz. 424, 666 P.2d 524 (App.1983), Caretto's refusal to submit to testing was excused because the officer did not clarify Caretto's apparent confusion as to whether he had a right to consult with an attorney before submitting to the second breath test. *Gaunt* held that when a DUI suspect shows confusion regarding his right

---

3. While the administration of tests "ad infinitum" would raise a legitimate concern, see *Rodriguez*, 173 Ariz. at 454, 844 P.2d at 621, an authorization to administer the two methods of breath testing described in section 28–695(A)(3) does not. Substituting the twenty-minute observation period necessary for single test validity for the fifteen-minute deprivation period necessary for duplicate testing certainly does not place any onerous burden on a suspect or make it more likely that a suspect would refuse and thereby suffer an implied consent suspension.

4. In his answering brief, Caretto makes a passing assertion, without citation to authority, that permitting administration of both tests would be irrational and therefore unconstitutional. We have concluded to the contrary, finding administration of both tests to be rational and in furtherance of a legitimate legislative purpose. We therefore summarily reject this argument.

to an attorney, the police must adequately warn the suspect such that a reasonable person under the circumstances would understand that the request for an attorney cannot delay submission to testing. 136 Ariz. at 426, 666 P.2d at 526.

¶ 23 Here, the ALJ found that when Caretto refused to submit to. the second test and requested an attorney, Sayers warned him that he was "not entitled to further delay in taking the test(s) *for any reason*" (emphasis added). The ALJ further found that Sayers warned Caretto that "[f]urther delay will be considered refusal to submit to the test(s)" and that a one-year suspension would result. We are of the opinion that a reasonable person in Caretto's circumstances would have understood from the officer's warning that delay "for any reason" would encompass delay to await consultation with a lawyer. The ALJ's implied finding to this effect is supported by competent evidence in the record, and the superior court erred in finding to the contrary.

### III. Notice of Consequences

¶ 24 In finding (3), the superior court found the suspension invalid because the officer failed to warn Caretto prior to the second test request that a refusal would result in his license being suspended for one year. ADOT argues that neither the law nor the record supports the court's finding.

¶ 25 Caretto has failed to respond to this contention. When an appellee fails to address a debatable issue in its answering brief, such failure constitutes a confession of error. *Reeb v. Interchange Resources, Inc.,* 13 Ariz.App. 16, 19, 473 P.2d 818, 821, *vacated on other grounds,* 106 Ariz. 458, 478 P.2d 82 (1970). Because it is debatable whether a law officer has a duty to re-advise DUI suspects of the consequences of refusing a second breath test after a warning prior to a first test, Caretto's failure to address this argument in his response constitutes confession of error.

¶ 26 Notwithstanding, we agree with ADOT that the superior court's finding is not supported by the record. Sayers testified, and the ALJ specifically found, that

after Caretto refused to submit to the second test, Sayers warned Caretto again that his license would be suspended for one year if he did not submit to the second breath test. Because the ALJ's conclusion was supported by competent evidence in the record, the superior court's rejection of that finding was error.

### IV. Transcription Costs

¶ 27 ADOT requests that we remand to the superior court for a determination regarding reimbursement of the state's costs for preparation of the record. Because A.R.S. section 12–912 (1992) authorizes the superior court to award "reasonable" transcription costs to a prevailing defendant agency, we grant ADOT's request.

### CONCLUSION

¶ 28 · The superior court erred as a matter of law in concluding that the record did not support the ALJ's findings. We therefore vacate the superior court's decision, reinstate the ALJ's decision, and remand to the superior court for proceedings concerning reimbursement of the state's transcription costs.

LANKFORD, P.J., and GARBARINO, J., concur.