567 S.E.2d 687

**Luther W. HANSON, Petitioner Below, Appellant**

v.

**Joe MILLER, Commissioner of the West Virginia Division of Motor Vehicles, Respondent Below, Appellee**

and

**State of West Virginia, Plaintiff Below, Appellee**

v.

**Emery Leon Massey, Defendant Below, Appellant.**

No. 30117.

Supreme Court of Appeals of West Virginia.

Submitted April 3, 2002.

Decided July 3, 2002.

**678**

John D. Wooton, Esq., Wooton Law Firm, Beckley, for Appellants.

Darrell V. McGraw, Jr., Attorney General, Janet E. James, Assistant Attorney General, Charleston, for Appellees.

PER CURIAM.

In the instant case, the Circuit Court of Raleigh County ruled that evidence of the results of a breathalyzer machine [1] analysis of a motor vehicle driver's blood alcohol level that was based on a "one-sample" protocol met the evidentiary threshold of scientific reliability; and that the machine's results were therefore admissible into evidence. We uphold this ruling.

## I.

### *Facts & Background*

Recounting in detail the somewhat complex underlying factual and procedural situation is not necessary to our discussion and holding, and therefore we give only a brief summary. Luther Hanson, one of the appellants, challenged the revocation of his driver's license in the Circuit Court of Raleigh County, claiming that the results of a breathalyzer machine analysis of his blood alcohol level was improperly admitted in the administrative license revocation hearing. [2] Emery Massey, the other appellant, raised a similar objection in connection with the use of breathalyzer machine results in a criminal DUI proceeding. The two cases were consolidated for hearing by the circuit court.

The basis of both challenges was the claim that the evidence did not meet the evidentiary threshold of scientific reliability. After a hearing that involved expert testimony from both the appellants and the State on the breathalyzer issue, and evidence from the

---

**1.** We use the term "breathalyzer machine" generically to mean a machine that uses a sample of ·a person's exhaled breath to calculate the person's blood alcohol level.

**2.** Mr. Hanson also challenged the admissibility of evidence regarding horizontal gaze nystagmus ("HGN") in Mr. Hanson's case. The record on this challenge was scant at best, and the HGN evidence was merely cumulative; consequently we do not address this issue. *See State v. Barker,* 179 W.Va. 194, 366 S.E.2d 642 (1988).

appellants on the HGN issue, the circuit court ruled that the evidence was properly admitted against the appellants. The instant appeal was taken from that ruling.

## II.

### Standard of Review

■ We generally review a court's evidentiary rulings under an abuse of discretion standard. *See* Syllabus Point 2, *State v. Peyatt,* 173 W.Va. 317, 315 S.E.2d 574 (1983). But if the claimed error relating to evidentiary admissibility turns on the interpretation of the *West Virginia Rules of Evidence,* our review is *de novo. See* Syllabus Point 1, *Gentry v. Mangum,* 195 W.Va. 512, 466 S.E.2d 171 (1995).

## III.

### Discussion

■ The appellants are not challenging the admissibility of breathalyzer machine results generally—rather, the appellants challenge the admissibility of breathalyzer machine results when only one sample of an individual's breath is tested by the machine.

The state-approved process for using a breathalyzer machine to measure a person's blood alcohol level, as determined by the West Virginia Division of Health, is codified at 64 *Code of State Regulations* 10.1 to 10.10 [1990].

In Syllabus Points 1 through 4 of *State v. Dyer,* 160 W.Va. 166, 233 S.E.2d 309 (1977), we held:

1. Under provisions and in accordance with requirements of *W.Va.Code,* 17C–5A–1, a breathalyzer test of the breath of a person arrested on a charge of driving a motor vehicle on a public highway or street while under the influence of intoxicating liquor is a test for determining the alcoholic content of the arrested person's blood.

2. "Before the result of a Breathalyzer test for blood alcohol administered pursuant to *Code,* 17C–5A–1, et seq., as amended, is admissible into evidence in a trial for the offense of operating a motor vehicle while under the influence of intoxicating liquor, a proper foundation must be laid for the admission of such evidence." Syllabus, *State v. Hood,* 155 W.Va. 337, 184 S.E.2d 334 (1971).

3. Upon the trial of a person arrested for the offense of driving a motor vehicle on a public highway or street of the state while under the influence of intoxicating liquor, evidence of the results of a breathalyzer test, administered in compliance with the requirements of law, showing that there was at the time ten hundredths of one percent or more, by weight, of alcohol in such person's blood, is admissible as prima facie evidence that the person was under the influence of intoxicating liquor. W.Va.Code, 17C–5A–5.

4. In the trial of a person charged with driving a motor vehicle on the public streets or highways of the state while under the influence of intoxicating liquor, a chemical analysis of the accused person's blood, breath or urine, in order to be admissible in evidence in compliance with provisions of W.Va.Code, 17C–5A–5, "must be performed in accordance with methods and standards approved by the state department of health." When the results of a breathalyzer test, not shown by the record to have been so performed or administered, are received in the trial evidence on which the accused is convicted, the admission of such evidence is prejudicial error and the conviction will be reversed.

Applying the foregoing principles to the instant case, the appellants did not show that a one-sample protocol is an improper administration of the breathalyzer machine under the rules prescribed by the Department of Health.

Leaving aside the requirements of the Department of Health, the appellants also claim that the results of a one-sample protocol are so inherently unreliable as to be inadmissible under Rule 702 of the *West Virginia Rules of Evidence.*[3]

---

**3.** Rule 702 states:
    If scientific, technical, or other specialized knowledge will assist the trier of fact to under-

stand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education

**680**

In analyzing the admissibility of expert testimony under Rule 702 of the West Virginia Rules of Evidence, the trial court's initial inquiry must consider whether the testimony is based on an assertion or inference derived from the scientific methodology. Moreover, the testimony must be relevant to a fact at issue. Further assessment should then be made in regard to the expert testimony's reliability by considering its underlying scientific methodology and reasoning. This includes an assessment of (a) whether the scientific theory and its conclusion can and have been tested; (b) whether the scientific theory has been subjected to peer review and publication; (c) whether the scientific theory's actual or potential rate of error is known; and (d) whether the scientific theory is generally accepted within the scientific community.

Syllabus Point 2, *Wilt v. Buracker*, 191 W.Va. 39, 443 S.E.2d 196 (1993).

The appellants presented expert testimony to the effect that the results from a one-sample protocol have a greater theoretical potential for unreliability than those from a two-sample protocol. Put another way, the appellants suggest that a second-sample "check" on the machine's reliability is not present in the one-sample protocol. However, the appellant's expert did not present evidence, much less proof, that when a two-sample protocol is used, there are, in fact, a significant number of cases where the machine gives different results for the different samples. In their brief, the State concedes that a two-sample protocol "might" give more reliable results.

The appellants do not cite us to any jurisdiction that has held that a one-sample protocol makes breathalyzer machine results inadmissible. Several courts have ruled that a one-sample protocol is acceptable. In *State*

may testify thereto in the form of an opinion or

*v. Dille*, 258 N.W.2d 565, 569 (Minn.1977), the court stated:

> Although it might be a preferred practice to run duplicate tests, the failure to do so in this case is not a sufficient reason to exclude the test results.
>
> \* \* \*
>
> [T]he possibility of error in the test results [from having only a single sample] is a matter for the jury to consider in its evaluation of the test's reliability.

*See also Caretto v. Ariz. Dept. of Trans.*, 192 Ariz. 297, 965 P.2d 31, 35 (1998) (both duplicate- and single-sample protocols result in admissible evidence); *Commonwealth v. Durning*, 406 Mass. 485, 548 N.E.2d 1242, 1247, n. 9 (1990) (single-sample protocol is adequate).

Based on the foregoing, we conclude that the circuit court did not err in holding that the results of the breathalyzer test were admissible, despite the use of a one-sample protocol.

### IV.

#### *Conclusion*

The circuit court's decision upholding the admission of the breathalyzer results is affirmed. This case is remanded to circuit court for further proceedings consistent with this opinion.

Affirmed.

Justice McGRAW, deeming himself disqualified, did not participate in the decision of this case.