834 P.2d 818

Gene SHELBY, an unmarried woman; Edward DeValk and Mary Jane DeValk, husband and wife, representatives of the class of individuals of Las Casas Bellas Subdivision, Tucson, Arizona; Las Casas Bellas Condominiums Association, an Arizona non-profit corporation, and Members of the Board of Directors of Las Casas Bellas Condominiums Association, Plaintiffs/Appellants,

v.

The ARIZONA REGISTRAR OF CONTRACTORS, Intervenor/Appellee.

No. CV–91–0173–PR.

Supreme Court of Arizona,
En Banc.

Aug. 6, 1992.

Tanis A. Duncan, Tucson, for plaintiffs/appellants.

Grant Woods, Atty. Gen. by Fred W. Stork, III, William V. Hornung, Phoenix, for intervenor/appellee.

## OPINION

FELDMAN, Chief Justice.

Petitioners Gene Shelby, Ed and Mary DeValk, and Las Casas Bellas Condominium Association seek review of a court of appeals opinion limiting their total award from the Residential Contractors' Recovery Fund (the Fund) under A.R.S. §§ 32–1131 to –1140. *See Shelby v. Arizona Registrar of Contractors,* 169 Ariz. 137, 817 P.2d 941 (Ct.App.1991). The issues presented regarding the Fund's award limits are questions of first impression. Accordingly, we granted review. *See* Rule 23(c)(4), Ariz. R.Civ.App.P., 17B A.R.S. We have jurisdiction pursuant to article 6, § 5(3) of the Arizona Constitution and A.R.S. § 12–120.-24.

## FACTS AND PROCEDURAL HISTORY

The individual Petitioners, Gene Shelby and Ed and Mary DeValk, own individual condominium units in Las Casas Bellas Condominiums in Tucson. Shelby owns four units and resides in one, while the DeValks own and reside in one condominium unit. Shelby and the DeValks filed an action against the general contractor that built the condominium project, the project developer, and other parties. So far as relevant to this proceeding, Petitioners sought damages for the contractor's and developer's negligence and breach of warranty in constructing the development, and for misrepresentation.

Shelby and the DeValks also named their condominium association, Las Casas Bellas Condominium Association (the Association), as a defendant, seeking damages for the Association's alleged failure to repair and maintain the common elements of the condominium project, as required by the Declaration of Covenants, Conditions and Restrictions and Grant of Easements (CCRs) established for the condominium project. The developer formed the Association to manage and control the common elements of the project. At the time the action commenced, the developer still maintained control over the Association's board of directors.[1]

Shelby and the DeValks requested that all individual condominium owners be certified as a class under Rule 23, Ariz.R.Civ.P., 16 A.R.S. The trial court denied that motion. Minute Order (May 16, 1988). After the individual condominium owners gained control of the Association, Shelby and the DeValks moved for reconsideration of their previous motion to certify the class or, in the alternative, for leave of court to allow the Association to join as a plaintiff, under Rule 19, Ariz.R.Civ.P., because it was no longer an alter ego of the developer. The trial court granted the motion to join the Association as a plaintiff but again refused to certify the class. Minute Order (April 17, 1989).

At trial, the parties entered into a stipulated judgment providing that Shelby was entitled to $25,250 and the DeValks to $17,400 from the developer on the negligence and breach of warranty claims. Stipulated Judgment (Jan. 22, 1990). These sums represented the cost of repairing or replacing the roofs over Shelby's and the DeValks'

1. The unit owners could not control the board until they collectively purchased enough units from the developer to obtain sufficient voting power to elect the board's directors. The unit owners obtained control of the Association's board of directors in November 1989.

respective units (Buildings A and B). The judgment also awarded the Association $35,720 "on behalf of all the owners of 63 residential units in Las Casas Condominium" for repairing construction defects in the condominium roads, pool, spa, and the roof over Building C. Because the roads, pool, spa, and roofs are all considered common elements of the development, as defined by the CCRs and A.R.S. § 33–1202(7), the parties agree that all sums awarded represent damages for defects in the common elements of the development.

After entry of judgment, Shelby, the DeValks, and the Association (collectively Petitioners) applied to the superior court for an order under A.R.S. § 32–1136(B) requiring payment of the judgment from the Fund established by A.R.S. § 32–1132 because the developer was no longer doing business and its contractor's license had been revoked.[2] The Registrar of Contractors (the Registrar) did not object to payment from the Fund but filed an objection to the amount of the payment sought. The trial court ruled that Petitioners' combined recovery from the fund was limited to a single award totalling $15,000. The court of appeals affirmed, and we granted the petition for review. We now reverse and vacate the court of appeals' opinion.

## DISCUSSION

As framed by the Registrar, the principal issue presented in this case is whether the Fund statutes (A.R.S. §§ 32–1131 to –1140) permit individual condominium unit owners to recover, to the statutory aggregate limit of $75,000, damages to a condominium's

common elements, or whether recovery for all damages to a condominium's common elements is limited to a single $15,000 maximum award.

### A. Statutory Provisions for Recoveries from the Fund

The legislature established the Fund in 1981 in part "to provide improved protection for owners and lessees of property who contract for the construction or alteration of residential structures." 1981 Sess. Laws ch. 221, § 1 (legislative purpose). The legislature created the Fund as part of a broad regulatory scheme for the commercial and industrial construction business. *See id.* §§ 1–38. The legislature has frequently amended the Fund statutes, for example, to limit the Fund's obligations and change its award limits. *See, e.g.,* 1986 Sess. Laws ch. 318, § 8; 1983 Sess. Laws ch. 149, §§ 1–3.

A.R.S. § 32–1132 provides in relevant part that

*any person injured* by an act, representation, transaction or conduct of a residential contractor, which is in violation of this chapter or the regulations promulgated pursuant to this chapter, *may be awarded* ... an amount of *not more than fifteen thousand dollars* for damages sustained by the act, representation, transaction or conduct. An award from the fund is *limited to the actual damages* suffered by the claimant as a direct result of the contractor's violation but shall not exceed an amount necessary to complete or repair a *residential structure or appurtenance within resi-*

---

2. A.R.S. § 32–1136(B) provides:

When any injured person recovers a valid judgment against any residential contractor for such act, representation, transaction or conduct which is in violation of this chapter or the regulations promulgated pursuant to this chapter, which occurred on or after July 1, 1981, the injured person may on twenty days' written notice to the registrar apply to the court for an order directing payment out of the fund, of the amount unpaid on the judgment, subject to the limitations stated in this article. If the injured person failed to give notice to the registrar at the time of commencement of the action as required by subsection A of this section, the court may

direct payment out of the fund upon receipt of a consent to payment signed on behalf of the registrar. If the injured person has given notice to the registrar as required by subsection A of this section, the court may direct payment out of the fund either on receipt of a consent to payment signed on behalf of the registrar or, in the absence of any written consent, after the notice period required by subsection B of this section. If the court receives written objections by the registrar, the court shall not direct payment from the fund without affording the registrar a reasonable opportunity to present and support his objections.

*dential property lines....* No more than the maximum individual award from the fund shall be made on *any individual residence or to any injured person....*

(Emphasis added.) Thus, the statute authorizes awards only to injured persons and sets a maximum individual award limit of $15,000 for "any individual residence or to any injured person." A.R.S. § 32–1131(3) defines "person injured" as

> any owner of residential real property which is classified as class five property under § 42–162 [the tax code], and which is actually occupied by the owner as a residence including, but not limited to, community property, tenants in common or joint tenants[,] who is damaged by the failure of a residential contractor to adequately build or improve a residential structure or appurtenance on that real property.

In sum, we believe this statute sets three requirements to qualify as a person injured under the statute. First, the claimant must be an "owner of residential real property" as classified under the tax code. Second, the owner must actually occupy the property "as a residence including, but not limited to, community property, tenants in common or joint tenants." Third, the claimant must be "damaged by the failure of a residential contractor to adequately build or improve a residential structure or appurtenance on that real property." If an individual qualifies as a person injured, he is entitled under § 32–1132 to recover up to the maximum individual award for damage to any "individual residence."

Therefore, we must determine whether individual unit owners qualify as persons injured under the statute for damage to the condominium's common areas and, if so, whether injury to the common areas constitutes injury to each unit owner's individual residence. Likewise, we must decide whether the condominium association is the only person injured under the statute or whether it can sue on behalf of the individual unit owners as persons injured.

**B. Are Individual Unit Owners "Persons Injured" as a Result of Damage to the Condominium's Common Elements?**

As the court of appeals noted, an individual condominium owner is considered to own only

> a horizontal layer of "cubic content space" which is subject to his exclusive control, ... together with an undivided fractional or percentage interest held in common with other unit owners in the "general common elements." Among other things, the general common elements include the land, the foundations, floors, the exterior walls of each [unit], ceilings and roofs, and in general all that portion of the property other than that which is subject to the exclusive ownership and control of an individual [unit] owner.

*Shelby,* 169 Ariz. at 139, 817 P.2d at 943 (quoting *Makeever v. Lyle,* 125 Ariz. 384, 386, 609 P.2d 1084, 1086 (Ct.App.1980) (citation and footnote omitted)).

The parties agree that under § 42–162, owners of individual condominium units, such as Shelby and the DeValks, own residential real property. Indeed, a condominium unit is the "portion of the condominium designated for separate ownership or occupancy." A.R.S. § 33–1202(22). In this case, the parties also agree that Shelby and the DeValks actually occupy the property as a residence.[3] Finally, the Registrar concedes that Shelby and the DeValks were damaged by the residential contractor's failure adequately to build their condominium buildings.

The question before us arises because the damage affected only the roofs over those units, not the units themselves. These roofs are, of course, common elements of the condominium complex, which include "all portions of a condominium other than the units." A.R.S. § 33–1202(7). The Registrar argues that individual unit

---

3. Shelby, as noted, only occupies one of her four units and thus only qualifies as one "person injured." We do not address whether one can "actually occupy" more than one residence under the statute.

owners are not persons injured with respect to damage to the common elements because the individuals neither own nor actually occupy the common elements as a residence.

Although the common elements legally are not part of each unit, each condominium owner has an undivided fractional interest in the common elements; that interest "is *appurtenant to each [unit]* ... and the ownership of each individual [unit] and the appurtenant interest in the general common elements is 'vested as ... any separate parcel of real property is or may be under the laws of this state....'" *Makeever,* 125 Ariz. at 386, 609 P.2d at 1086 (citation omitted) (emphasis added); *see also* CCRs, Article III, Section 1 ("Every owner shall have a right and easement of enjoyment in and to the Common Elements which shall be appurtenant to and shall pass with the title to every [unit]"); A.R.S. § 33–1214 (regarding legal description of individual "unit and all the common elements, rights, obligations and interests appurtenant to that unit").

The statutory definition of "person injured" refers to damages from failure adequately to "build or improve a residential structure *or appurtenance* on that real property." A.R.S. § 32–1131(3) (emphasis added). Thus, because damage to the common elements is damage to rights appurtenant to the individual units, it must be considered damage to the rights inherent in *each* individual unit or residence affected. We conclude, therefore, that an individual unit owner is a person injured within the meaning of A.R.S. § 32–1131(3), even when the only damage sustained is to the common elements, such as a roof or foundation, rather than to the "cubic content space" subject to the exclusive control of the individual owner.

■ We also believe that damage to the common elements is damage to a unit owner's "individual residence" under A.R.S. § 32–1132. Even though the Fund statutes do not expressly define "individual residence," that definition must include "a residential property structure" and "appurtenances within residential property lines," as provided in § 32–1132. Because appurtenances to all individual dwelling units include the common elements of the condominium, a unit owner's individual residence must encompass the appurtenant common areas. This is particularly evident in this case because two of the structures damaged were the *roofs* over Shelby's and the DeValks' units. Any plain construction of "individual residence" must certainly include the roofs over one's living quarters. It would also include structures and appurtenances commonly associated with a personal abode, including the pools, spas, and access roads at issue here. *Cf. Hayden Partners Ltd. Partnership v. Maricopa County,* 166 Ariz. 121, 125, 800 P.2d 987, 991 (Ct.App.1990) (common elements of residential subdivision are considered residential property within meaning of A.R.S. § 42–162(A)(5) (the tax code)).

Thus, Shelby and the DeValks are persons injured by damage to their individual residences and are each entitled to recover from the Fund for damages to the common elements appurtenant to their individual units up to the $15,000 limit allowed by the statute.[4]

C. Is the Association the only "Person Injured," so that Recovery Under the Fund Statutes is Limited to a Single $15,000 Maximum Award?

Petitioners and the Registrar agree that the Association is a proper party to file an

---

**4.** Neither party has raised, and we do not consider, any question regarding other, perhaps equitable, limits to recovery by the individual plaintiffs. For instance, should Shelby be entitled to recover the cost of repair of the roof over unit A and to keep the money rather than to put the funds to use to repair the damage for the benefit of units in the same building sharing the same roof? *See generally* John D. Perovich, Annotation, *Proper Party Plaintiff in Action for Injury to Common Areas of Condominium Devel-*

*opment,* 69 A.L.R.3d 1148 (1976). Presumably, these questions are not relevant to the present case. In any event, nothing in this opinion expresses any view on that subject.

We also do not express any view regarding the trial court's method of calculating damages in the original order of judgment. The Registrar has not raised, for example, any question that the plaintiffs' total recovery exceeded either the cost of repair or the total damages to the complex.

action for damage to the common elements of the condominium. We also agree. A.R.S. § 33–1242(4) grants the Association the power to "[i]nstitute, defend, or intervene in litigation or administrative proceedings in its own name or on behalf of itself or two or more unit owners on matters affecting the condominium." Additionally, "the association is responsible for maintenance, repair and replacement of the common elements." A.R.S. § 33–1247.

■ The question then becomes whether recovery from the Fund is limited to $15,000 or whether the Petitioners or the Association can recover multiple awards on behalf of all the unit owners damaged. The Registrar argues that only the Association may be permitted to recover and that it does so as a single "person injured"—subject, therefore, to the $15,000 limit—because it is the only "person" with the right and duty to maintain and repair the common elements.

Having held that each unit owner is a person injured, however, it follows that under A.R.S. § 33–1242(4) the Association can recover on behalf of each unit owner for damage to the common elements. Further, the record demonstrates that the Association was, in fact, acting on behalf of individual unit owners in seeking recovery from the Fund. The trial court initially awarded the Association $35,720 "on behalf of all the owners of 63 residential units in Las Casas Bellas Condominium." *Shelby*, 169 Ariz. at 138, 817 P.2d at 942. We believe, therefore, that the Association can recover the maximum individual award of $15,000 for *each* unit owner qualifying as an injured person who does not receive his own recovery, subject to the $75,000 aggregate limit payable per contractor license under A.R.S. § 32–1139(A). We do not, of course, authorize duplicate recovery of damages. Again, the parties have not raised, and we do not reach, any question pertaining to the proper party plaintiff. Nor do the parties raise procedural questions regarding application of the funds recovered. *See supra* note 3.

**D. Attorneys' Fees**

■ Petitioners argue that they are entitled to attorneys' fees under A.R.S. § 12–348(A), which provides that

a court shall award fees and other expenses to any party other than this state ... which prevails by an adjudication on the merits in ...

.    .    .    .    .

2. A court proceeding to review a state agency decision, pursuant to chapter 7, article 6 of this title [the administrative review act]....

They further argue that *Mission Hardwood Co. v. Registrar of Contractors*, 149 Ariz. 12, 716 P.2d 73 (Ct.App.1986), interprets this statute to permit an award of attorneys' fees whenever a state agency makes an "agency decision" by actively contesting an issue on the merits in court proceedings. The Registrar argues that Petitioners read the statute and *Mission Hardwood* too expansively. We need not decide this question because we believe A.R.S. § 12–348 and, consequently, *Mission Hardwood* do not apply under the Fund statutes.

In 1987, the legislature amended the Fund statutes' provision regarding attorneys' fees. At all times relevant to this case, A.R.S. § 32–1132 provided that *"[n]otwithstanding any other provision of law,* monies in the contractors' recovery fund *shall not be directly awarded* for attorneys' fees or costs *except* in contested cases appealed to the superior court."* (Emphasis added.) Thus, the provisions of A.R.S. § 12–348 do not apply to attorneys' fees awarded from the Fund. The only provision for obtaining attorneys' fees from the Fund is § 32–1132, allowing fees only "in contested cases appealed to the superior court."

The statutes appear to provide two methods of obtaining recoveries from the Fund: under A.R.S. § 32–1136 or § 32–1154. Section 32–1136 provides that "[w]hen any injured person recovers a valid judgment against any residential contractor ..., the injured person may on twenty days' written notice to the registrar apply to the *court* for an order directing payment out of the

fund...." A.R.S. § 32-1136 (emphasis added). Thus, while this section also provides that the Registrar can object to the payment, in the absence of objection the court itself can order payments from the Fund. *Id.* This section contemplates a preceding action brought by the injured person against the contractor, a judgment awarded to the injured person, and an application by that person for a court order directing the Registrar to pay the judgment. That underlying judgment, of course, may or may not include an amount awarded as attorneys' fees. As we read the fee provision, there can be no additional award of attorneys' fees in a proceeding under § 32-1136, and the injured person's recovery of attorneys' fees must turn on the allowance of such fees in the preexisting judgment.

Section 32-1154(F) provides that "[n]otwithstanding any other provisions in this chapter, ... the registrar may order payment from the residential contractors' recovery fund to remedy [a] violation [of this chapter]. The contractor or injured person may seek *judicial review* of the registrar's award under title 12, chapter 7, article 6 [the administrative review act]." A.R.S. § 32-1154(F) (emphasis added). Section 12-905 of the Administrative Review Act grants the superior court jurisdiction to review final administrative decisions. Thus, the *Registrar* can order or refuse to order awards from the Fund, and an injured person can *appeal* the Registrar's order to the *superior court. See Wilson v. Registrar of Contractors,* 161 Ariz. 617, 618 n. 1, 780 P.2d 450, 451 n. 1 (Ct.App. 1989).

This section contemplates recovery attempts through administrative proceedings before the Registrar, in which the Registrar determines whether the claimant is entitled to recover and, if so, in what amount. In these administrative proceedings, no fees are to be awarded because A.R.S. § 32-1132 provides that attorneys' fees "shall not be directly awarded," except for "contested cases appealed to the superior court." These are cases in which, after an award by the Registrar under § 32-1154, review is sought under the ad-

ministrative review act (Title 12, ch. 7, art. 6). It is in this review process—"contested cases appealed to the superior court"—that § 32-1132 permits the award of attorneys' fees.

██ Applying this analysis to the present action, we conclude that Petitioners are not entitled to an award of attorneys' fees. Petitioners did not present their administrative claim under A.R.S. § 32-1154 and then seek judicial review as contemplated by that statute. Rather, these proceedings arise from a direct action brought by Petitioners against the contractor in superior court, a judgment awarded in that action, and an application under A.R.S. § 32-1132 for a court order directing the Registrar to pay the judgment. The Registrar filed an objection, arguing that the condominium owners were not persons injured and that the Association was limited to an aggregate recovery of $15,000. We have determined those issues contrary to the Registrar's position but find no authority for payment of any fees in addition to those that may be awarded in the underlying action. Accordingly, we conclude that Petitioners are not entitled to recover their attorneys' fees in these proceedings against the Registrar.

## CONCLUSION

We vacate the court of appeals' opinion. Individual unit owners are persons injured under the statute with respect to damage to the common elements appurtenant to their units. The trial court erred in holding that Shelby and the DeValks are not each entitled to a $15,000 award from the Fund for damages to the roofs over their respective condominium units. The Association is entitled to recover up to $15,000 on behalf of each unit owner who qualifies as a person injured under A.R.S. § 32-1131 and who did not receive an individual award. The aggregate award to all plaintiffs is subject to the $75,000 limit under A.R.S. § 32-1139 and may not exceed the total actual damage to the common areas. Petitioners are not awarded attorneys' fees from the Fund. The matter is remanded to

the trial court for proceedings consistent with this opinion.

MOELLER, V.C.J., and CORCORAN, J., and CAMERON, J. (retired), concur.

FRANK X. GORDON, Jr., J. (retired), participated in this decision but retired before it was filed.