IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THOMAS McMURREN, a single man, | ) | 2 CA-CV 2002-0022 |
| | ) | DEPARTMENT A |
| Plaintiff/Appellee, | ) | |
| | ) | O P I N I O N |
| v. | ) | |
| | ) | |
| JMC BUILDERS, INC., an Arizona | ) | |
| corporation, | ) | |
| | ) | |
| Defendant/Appellant. | ) | |
| | ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C-20011552

Honorable Lina S. Rodriguez, Judge

AFFIRMED

---

Russo, Cox & Russo, P.C.
  By Karl MacOmber
Tucson
Attorneys for Plaintiff/Appellee

Jack L. Lansdale, Jr.
Tucson
Attorney for Defendant/Appellant

---

B R A M M E R, Presiding Judge.

¶ 1        JMC Builders, Inc., appeals from the superior court's reversal of an administrative

law judge's (ALJ) interpretation of whether Thomas McMurren[1] qualified as a person injured

---

[1]Thomas Orville McMurren died on December 6, 2001. Thomas William McMurren, his
son and the personal representative of his estate, has been substituted in his place. Accordingly,

and eligible to make a claim against the Arizona Residential Contractors' Recovery Fund. In this issue of first impression, we concur with the superior court's ruling and conclude that an owner of a residential structure qualifies as a person injured under A.R.S. § 32-1131(3), who is eligible to make a claim against the Fund, if the owner occupies or intends to occupy the home as a residence when the contract with the residential contractor is entered into or when a claim resulting from a violation of A.R.S. § 32-1154 accrues. Accordingly, we affirm the superior court's order.

## Factual and Procedural Background

¶ 2        McMurren's home was damaged by fire while he was on vacation in July 1997.[2] At the administrative hearing, McMurren stated that, at the time of the fire, he had been living in the home at least "part time." Because the dwelling was uninhabitable after the fire, McMurren lived temporarily in a motor home parked in his driveway. He hired JMC in January 1998 to rehabilitate the damaged property. Dissatisfied with JMC's performance, he filed an administrative complaint against JMC with the Arizona Registrar of Contractors in July 1998 and moved back into his home in August. The registrar found thirty-one instances of "unacceptable workmanship requiring proper corrective action by [JMC]" and issued an order requiring JMC to correct the deficiencies. After JMC failed to comply with the order, the registrar revoked its contracting license. In December 1999, McMurren filed a claim against the Fund pursuant to

we use "McMurren" interchangeably.

[2]Although the transcript of the administrative hearing is not part of the record on appeal, the parties do not appear to dispute the basic facts of the case.

A.R.S. § 32-1154(E). The registrar denied McMurren's claim, and McMurren requested a hearing.

¶ 3    At the administrative hearing held in February 2001, the ALJ considered a report from a registrar's investigator that stated McMurren's property had been occupied as a group home since October 1999. Relying on this report, and referring to § 32-1131(3), the ALJ reasoned that McMurren had not been " an occupant of the residence . . . when [his] claim for damages [had been] filed and [had not been] an occupant of the residence on the date of the hearing."[3] Section 32-1131(3) provides that a " [p]erson injured" is an owner of residential real property who actually occupied or intended to occupy the property as a residence and who is damaged by the failure of a residential contractor to adequately build or improve that residence. The ALJ then concluded that McMurren was not a " [p]erson injured" as defined in § 32-1131(3) and, accordingly, was not eligible to make a claim against the Fund. McMurren appealed the ALJ's decision to the superior court pursuant to the Administrative Review Act, A.R.S. §§ 12-905 through 12-914. *See* § 32-1154(E).

¶ 4    In reviewing the ALJ's decision, the superior court ruled that " the relevant time period in determining whether a claimant qualifies as a 'person injured' is when the contract is entered into and/or the time that the claim arises" and not, as the ALJ had found, when the claim is filed or at the time of the administrative hearing. The superior court found that the ALJ had misinterpreted the meaning of " [p]erson injured" and remanded the case for the ALJ to determine whether " McMurren [had been] occupying his home at the time the . . . contract was entered into

_____

[3]Implicit in this finding is a finding that McMurren had not intended to occupy the residence on either date. *See* A.R.S. § 32-1131(3).

and/or the time that the claim [arose]."[4] JMC has appealed, arguing that the superior court abused its discretion in reversing the ALJ' s interpretation of § 32-1131(3). We disagree.

**Superior Court Review of the ALJ' s Decision**

¶ 5 Preliminarily, JMC argues that the superior court abused its discretion in interpreting § 32-1131(3) differently from the ALJ, asserting that the court was limited to determining only whether substantial evidence in the record supported the ALJ' s decision. JMC' s focus is on the wrong issue. Generally, " [w]hen reviewing an administrative decision, [the superior court is] limited to determining whether the administrative action was illegal, arbitrary, capricious, or involved an abuse of discretion." *Schade v. Department of Transp.*, 175 Ariz. 460, 461, 857 P.2d 1314, 1315 (App. 1993). When the issue involves an interpretation of law, however, " the [superior] court . . . [is] free to draw [its] own legal conclusions and determine whether the agency erred in its interpretation of the law." *Eshelman v. Blubaum*, 114 Ariz. 376, 378, 560 P.2d 1283, 1285 (App. 1977).

¶ 6 Because the issue before the superior court was the legal interpretation of § 32-1131(3), the court' s scope of review on that issue was de novo, and it owed no deference to the ALJ' s interpretation of the law. *See Lavidas v. Smith*, 195 Ariz. 250, 987 P.2d 212 (App. 1999). The court concluded that the ALJ had made his only factual findings based on an erroneous interpretation of § 32-1131(3). Because the ALJ failed to make any factual findings on whether McMurren had been occupying, or had intended to occupy, the property either when he

---

[4]We infer that the court also contemplated that the ALJ would consider all statutory elements, including whether McMurren had intended to occupy the residence on the critical dates. *See* § 32-1131(3).

4

entered into the contract with JMC or when the claim accrued, there were no pertinent findings for the superior court to deferentially review. *See Howard v. Nicholls*, 127 Ariz. 383, 621 P.2d 292 (App. 1980) (in reviewing administrative decision, court must affirm if substantial evidence supports it). Accordingly, the superior court did not err in reviewing de novo the applicable law.

## Court of Appeals Standard of Review

¶ 7        We likewise review the record to determine " whether the administrative action was illegal, arbitrary, capricious or involved an abuse of discretion." *Havasu Heights Ranch & Dev. Corp. v. Desert Valley Wood Prods., Inc.*, 167 Ariz. 383, 386, 807 P.2d 1119, 1122 (App. 1990). Because the ALJ based his decision on legal conclusions, we review that decision " for legal error, and are free to draw our own conclusions regarding the law." *Schade*, 175 Ariz. at 461, 857 P.2d at 1315. Our de novo review, accordingly, focuses on when a person making a claim against the Fund qualifies as a " [p]erson injured" under § 32-1131(3).

¶ 8        Section 32-1131(3) defines a " [p]erson injured" as

> any owner of residential real property which is classified as class three property under [a section of the tax code] and which is actually occupied or intended to be occupied by the owner as a residence . . . who [is] damaged by the failure of a residential contractor . . . to adequately build or improve a residential structure or appurtenance on that real property.

The statute does not state when the person injured must have occupied or intended to occupy the damaged premises as a residence. The parties have not pointed us to any Arizona cases, nor have we found any, that resolve this issue.

## Statutory Scheme

5

¶ 9     The Fund was established in 1981 as part of a broad scheme regulating the construction industry. *See* 1981 Ariz. Sess. Laws, ch. 221, §§ 1-38. In part, the purpose of the Fund is " to provide improved protection for owners and lessees of property who contract for the construction or alteration of residential structures." 1981 Ariz. Sess. Laws, ch. 221, § 1. Section 32-1132(A), A.R.S., provides in pertinent part:

> The residential contractors' recovery fund is established, to be administered by the registrar, from which any person injured by an act, representation, transaction or conduct of a residential contractor that is in violation of this chapter or the rules adopted pursuant to this chapter may be awarded in the county where the violation occurred an amount of not more than twenty thousand dollars[5] for damages sustained by the act, representation, transaction or conduct.

¶ 10    There are two methods by which one whose residence has been damaged may obtain compensation from the Fund. One, found in A.R.S. § 32-1136(B), provides that, " [w]hen any injured person recovers a valid judgment against any residential contractor for such act, representation, transaction or conduct which is in violation of this chapter, . . . the injured person may on twenty days' written notice to the registrar apply to the court for an order directing payment out of the fund." This section contemplates a civil action by the injured person against the contractor, resulting in a judgment in favor of the injured person. The injured person may then apply for a court order directing the registrar to pay the judgment from the Fund, up to the statutory limit in § 32-1132(A). *See Shelby v. Arizona Registrar of Contractors*, 172 Ariz. 95, 834 P.2d 818 (1992).

---

[5]The amount a person injured can collect from the Fund has since been increased to thirty thousand dollars. *See* 2002 Ariz. Sess. Laws, ch. 179, § 1.

¶ 11        The other method, and the one McMurren chose, allows an injured person to institute administrative proceedings in which the registrar determines whether the claimant is entitled to recover from the Fund. The proceeding is begun by a claimant's filing a written complaint with the registrar within two years of the commission of an act constituting cause for suspension or revocation of the contractor's license. A.R.S. § 32-1155(A). Following an investigation and an opportunity for the contractor to appear and contest the complaint, the registrar may suspend or revoke the contractor's license and may require the contractor to remedy any violations disclosed by the investigation. § 32-1154(B), (E). If a contractor's license is revoked or suspended because the contractor fails to comply with an order to remedy the violations, the registrar may order payment from the Fund. § 32-1154(E). "[T]he contractor or injured person may [then] seek judicial review of the registrar's final award pursuant to [the Administrative Review Act]," *id.*, which vests jurisdiction in the superior court to review final administrative decisions. § 12-905. Under either method, only a "[p]erson injured" is eligible to make a claim against and obtain an award from the Fund. § 32-1132. For the following reasons, we conclude that at least two legally relevant times when an owner may be a person injured as defined in § 32-1131(3) by either occupying or intending to occupy the damaged property are when the contract is entered into or when the claim accrues.

### Statutory Interpretation

¶ 12        "Our primary goal in interpreting statutes is to discern and give effect to legislative intent." *Hobson v. Mid-Century Ins. Co.*, 199 Ariz. 525, ¶ 8, 19 P.3d 1241, ¶ 8 (App. 2001). "We first consider the language of the statute and, if it is unclear, turn to other factors, including 'the statute's context, subject matter, historical background, effects, consequences, spirit, and

7

purpose.' " *Norgord v. State ex rel. Berning*, 201 Ariz. 228, ¶ 7, 33 P.3d 1166, ¶ 7 (App. 2001), *quoting id.*

a. Date of contracting

¶ 13 The legislative purpose and plain language of §§ 32-1131(3) and 32-1132 support the first part of our conclusion that one relevant time for considering whether a claimant is a person injured is when the owner and contractor enter into the contract for the work. As noted above, when the legislature created the Fund, its intent was partly to "protect[] . . . owners and lessees of property who contract" with residential contractors to build or improve their residences. 1981 Ariz. Sess. Laws, ch. 221, § 1. Section 32-1132(A) provides: "An award from the fund shall not be available to persons injured by . . . a residential contractor whose license was in an inactive status, expired, cancelled, revoked or suspended at the time of the contract." This language supports the conclusion that the legislature's intent in creating the Fund was to protect those who contract for residential construction by encouraging them to hire properly licensed residential contractors.

¶ 14 For an owner to recover from the Fund, the contractor must have a valid contractor's license at the time the parties enter into the contract. Furthermore, § 32-1131(3) includes in the definition of "[p]erson injured" "lessees of residential real property who contract directly with a residential contractor or indirectly with a subcontractor of that contractor." Accordingly, it follows that the date that either an owner or lessee and a contractor enter into a contract pursuant to which the questioned work is performed is an appropriate time for

determining whether the owner or lessee occupied or intended to occupy the property as a residence and, therefore, whether the owner or lessee may qualify as a person injured.[6]

b.      Date of injury

¶ 15      The legislative intent to compensate residential owners who are injured by contractors' acts that violate § 32-1154, as expressed in the plain language of § 32-1131(3), also supports the second part of our conclusion, that a relevant time for considering whether a claimant is a person injured is when the right accrues to a residential owner to sue a contractor who has violated the chapter.  Section 32-1131(3) establishes three requirements for a claimant to qualify as a person injured.

> First, the claimant must be an " owner of residential real property" as classified under the tax code.  Second, the owner must actually occupy [or intend to occupy] the property " as a residence . . . ." Third, the claimant must be " damaged by the failure of a residential contractor to adequately build or improve a residential structure . . . ."

*Shelby*, 172 Ariz. at 98, 834 P.2d at 821, *quoting* § 32-1131(3).  The legislature further stated its intent by providing in § 32-1132(A) that the Fund was established to compensate " any person injured by an act, representation, transaction or conduct of a residential contractor that is in violation of this chapter."

¶ 16      An award from the Fund is limited, therefore, to damages resulting from a violation of the chapter.  It follows that the legislative intent is satisfied by our interpretation that an owner is injured, and the claim accrues, when a contractor inadequately builds or improves the property,

---

[6]We are not presented the issue of whether the statutory remedy provided to owners claiming against the Fund contemplates contract assignment as a condition precedent to making a claim and, accordingly, do not address it.

thereby violating the chapter. If this occurs when the owner actually occupies or intends to occupy the property as a residence, then the owner qualifies as a person injured.

c.　　ALJ's decision

¶ 17　　　　As noted above, the ALJ decided that the relevant time for an owner's occupancy is either when the owner files a claim or when the hearing is held on the claim. We find this decision not only impractical and unworkable, but also unsupported by the language of § 32-1131(3) and inconsistent with the spirit and purpose of the statutes. First, the plain language of § 32-1131(3) does not support the ALJ's decision. The statute speaks of an owner who is "damaged" by a residential contractor but says nothing about when that owner must file a claim with the registrar or the Fund.

¶ 18　　　　Second, the ALJ's decision imposes conditions for recovery from the Fund not found in the express language of § 32-1131(3). For example, the ALJ's decision here would have required McMurren, who obviously had sustained damage by the time he occupied his property in August 1998, to nonetheless continue to occupy it for the next year and one-half, through all the proceedings against JMC before the registrar until he filed a claim against the Fund in December 1999. The ALJ's construction would also prevent McMurren from recovering from the Fund simply because he converted his property to a commercial use before he filed his claim. Further, the ALJ's interpretation penalizes owners who are damaged but who transfer ownership of their property before making a claim against the Fund. Such impediments would thwart the Fund's legislative purpose of providing protection for owners whose residences are damaged by a contractor's substandard work. McMurren's conversion of the property to a commercial use

from a residence before he filed his claim or at the time of the hearing on his claim should not affect whether he qualified as a "[p]erson injured" when the damage occurred.

¶ 19 Additionally, the ALJ's interpretation would allow a person who purchases a damaged residence at a discounted price from an owner who hired a contractor who caused the damage to begin occupying that residence and make a claim against the Fund, even though both parties were aware of the damage before the sale. That interpretation would permit an otherwise uninjured but knowledgeable purchaser to orchestrate becoming a "[p]erson injured," but would deny compensation to an owner who knowingly sells a damaged residence at a reduced value before filing a claim, even though the owner resided, or intended to reside, in the residence at the time the contractor was hired or when the claim accrued. Because the statute is silent on how long the occupancy must continue or whether it must be exclusive, our interpretation avoids the possibility that an owner will become an occupant long after a claim accrues or only after becoming cognizant of the occupancy requirement. The ALJ's interpretation would encourage the opposite result by allowing a person to buy a residence; hold it exclusively as a lessor for an extended period of time, neither occupying nor intending to occupy it; then move into a portion of it after a claim has accrued and file a claim against the Fund.

**Conclusion**

¶ 20 After considering the plain language of the statutes, the legislature's purpose in creating the Fund, and the logical consequences of the ALJ's interpretation, we agree with the superior court that the ALJ's interpretation of a person injured was legally erroneous. Two relevant times for determining whether a claimant is a "[p]erson injured" as defined in § 32-1131(3) and eligible to recover from the Fund pursuant to § 32-1132(A) are when the owner

11

and contractor enter into the contract and when the claim accrues. We therefore affirm the superior court's order remanding the case to the ALJ to determine whether McMurren was occupying or intending to occupy the residence either when he entered into the contract with JMC or when the claim against JMC accrued.[7]

¶ 21        McMurren requests attorney's fees from the state pursuant to A.R.S. § 12-348. Because the state is not a party to this appeal, we have no jurisdiction to award attorney's fees against it. Additionally, McMurren requests attorney's fees from JMC pursuant to A.R.S. § 12-349, arguing JMC's appeal is frivolous. Because the issue we decide is one of first impression and not frivolous, in our discretion, we decline to award McMurren attorney's fees on appeal.


_____
J. WILLIAM BRAMMER, JR., Presiding Judge

CONCURRING:



_____
M. JAN FLÓREZ, Judge

_____

[7]McMurren also argues that, on remand, we should direct the ALJ to recognize that the registrar has waived certain defenses and to order the registrar to pay McMurren's claim. Because the registrar has not denied the claim on remand, and we cannot assume that result will occur, and because the registrar has not raised additional defenses on remand, these issues are not before us. "Courts should not render 'advisory opinions anticipative of troubles which do not exist; may never exist; and the precise form of which, should they ever arise, we cannot predict.'" *Citibank v. Miller & Schroeder Fin., Inc.*, 168 Ariz. 178, 182, 812 P.2d 966, 1000 (App. 1990), *quoting Velasco v. Mallory*, 5 Ariz. App. 406, 410-11, 427 P.2d 540, 544-45 (1967). Accordingly, we do not address them.

_____

JOSEPH W. HOWARD, Judge