NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

BRIAN THOMAS FLANIGAN, *Plaintiff/Appellant*,

*v.*

ARIZONA REGISTRAR OF CONTRACTORS, *Defendant/Appellee*.

R&C DEVELOPMENT, LLC, *Appellee*.

No. 1 CA-CV 21-0536
FILED 8-11-2022

Appeal from the Superior Court in Maricopa County
No. LC 2020-000262-001
The Honorable Julie A. LaFave, Judge *Pro Tempore*

**REVERSED AND REMANDED**

COUNSEL

Kozub Kloberdanz, Scottsdale
By Daniel L. Kloberdanz
*Counsel for Plaintiff/Appellant*

Arizona Attorney General's Office, Phoenix
By Justin J. Larson
*Counsel for Defendant/Appellee, Arizona Registrar of Contractors*

---

**MEMORANDUM DECISION**

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Maria Elena Cruz and Judge Samuel A. Thumma joined.

---

**B R O W N**, Judge:

**¶1** Brian Flanigan appeals the superior court's order affirming a decision of the Arizona Registrar of Contractors (the "ROC"), which denied his administrative claim for compensation from the Residential Contractor's Recovery Fund ("Recovery Fund"). He argues the court erred when it decided that a 2019 statutory amendment changing the Recovery Fund's eligibility requirements did not apply to his claim. Because Flanigan filed his claim for compensation after the amendment went into effect, and the amendment does not suggest it was inapplicable to his claim, we reverse and remand for further proceedings.

**BACKGROUND**

**¶2** Flanigan is a trustee and a beneficiary of The Flanigan Family Trust (the "Trust"). In 2018, the Trust acquired title to a single-family residence in Phoenix (the "Home") after foreclosing on a defaulted loan. At the time, the Home was classified as "non-primary" property by Maricopa County and had previously been classified as rental property. Flanigan entered into a contract with R&C Development, LLC ("R&C") to remodel the Home, and he later testified that he intended to live there after the remodeling.

**¶3** Unsatisfied with R&C's work, Flanigan filed an administrative complaint with the ROC. After an investigation, the ROC found that the work did not meet minimum standards and directed R&C to correct specified deficiencies. When R&C failed to do so, the ROC issued a formal citation. On July 25, 2019, after R&C failed to respond to the citation, the ROC issued a final administrative decision and order temporarily suspending R&C's contractor's license and imposing a civil penalty.

**¶4** Flanigan made a demand against the contractor license bond issued by R&C's surety, and the surety settled with Flanigan, paying him $9,000. On October 21, 2019, Flanigan submitted an administrative claim,

on an approved ROC form, seeking recovery of his additional losses from the Recovery Fund. The form stated in bold print: "IMPORTANT: Failure to answer all questions or provide all required documentation will prevent the fund from processing your claim." The form listed the required documents, including "documentation from the contractor's bonding company showing the final disposition of your claim." Meanwhile, effective August 27, 2019, after the ROC suspended R&C's license and Flanigan sent his demand to the surety, but before Flanigan submitted his administrative claim, the legislature amended the Recovery Fund's eligibility requirements by removing references to property tax classification status. *See* 2019 Ariz. Sess. Laws ch. 145, § 16 (1st Reg. Sess.) (S.B. 1397); *see also* A.R.S. § 32-1132 (residential contractor's recovery fund).

**¶5**        Applying the pre-August 27, 2019 version of the statute, the ROC denied Flanigan's claim because the Home was not classified as either "noncommercial historic property" under A.R.S. § 42-12101(2), or "class three property" under A.R.S. § 42-12003 (defining tax classifications for real and personal property). Flanigan contested the denial and requested an administrative hearing, asserting he submitted his claim after the 2019 amendment removed the tax classification requirements. After a hearing, an administrative law judge ("ALJ") recommended that the ROC affirm its order denying eligibility. As relevant here, the ROC adopted the ALJ's decision. Flanigan appealed to the superior court, which found the 2019 amendment did not apply. The court therefore affirmed the ROC's denial and Flanigan timely appealed to this court. We have jurisdiction under A.R.S. § 12-913.

## DISCUSSION

**¶6**        The superior court must affirm an agency action unless it is "contrary to law, is not supported by substantial evidence, is arbitrary and capricious or is an abuse of discretion." A.R.S. § 12-910(F). The superior court reviews questions of law "without deference to any previous determination that may have been made on the question by the agency." *Id.* We apply the same principles when we review the superior court's ruling. *See Gaveck v. Ariz. State Bd. of Podiatry Exam'rs*, 222 Ariz. 433, 436, ¶ 12 (App. 2009). We review the superior court's interpretation of statutes de novo. *Tornabene v. Bonine ex rel. Ariz. Highway Dep't.*, 203 Ariz. 326, 332, ¶ 12 (App. 2002). In doing so, we apply the statute as written if it is unambiguous. *Ariz. Citizens Clean Elections Comm'n v. Brain*, 234 Ariz. 322, 325, ¶ 11 (2014).

### A.     2019 Amendment

¶7        Decades ago, the legislature established the Recovery Fund "to provide improved protection for owners and lessees of property who contract for the construction or alteration of residential structures." *McMurren v. JMC Builders, Inc.*, 204 Ariz. 345, 349, ¶ 9 (App. 2003) (quoting 1981 Ariz. Sess. Laws, ch. 221, § 1).  Before the 2019 amendment, access to the Recovery Fund was limited to "[p]ersons injured," defined by statute as:

> *[A]ny owner of residential real property that is either noncommercial historic property as defined in section 42-12101 or classified as class three property under section 42-12003.* The property must also be actually occupied or intended to be occupied by the owner as a residence. . . .

A.R.S. § 32-1131(3)(a) (2017) (emphasis added).  Because the Home did not fall within this definition, Flanigan could not access the Recovery Fund if § 32-1131(3)(a) (2017) applied to his administrative claim.   The 2019 amendment, however, removed the requirement that the property have specific tax classifications such that it now includes an individual who

> (a) [o]wns residential real property that is damaged by the failure of a residential contractor to adequately build or improve a residential structure or appurtenance. [and]
>
> (b) [a]ctually occupies or intends to occupy the residential real property described in subdivision (a) of this paragraph as the individual's primary residence.

A.R.S. § 32-1132(B)(1).  Thus, if the 2019 amendment applies to Flanigan's claim, the Home's tax classification would not prohibit payment from the Recovery Fund.

### B.     A.R.S. § 32-1133.01

¶8        A claimant that files a complaint with the ROC resulting in either the suspension or revocation of the contractor's licenses can access the Recovery Fund through an administrative process and does not have to file a civil suit against the contractor.  *Compare* A.R.S. § 32-1133.01 (administrative recovery), *with* A.R.S. § 32-1133 (civil recovery).  Regardless of which path the claimant follows, as soon as the license is suspended or revoked, the ROC may unilaterally disburse payment from the Recovery Fund for the beneficiary of the residential claimant:

Notwithstanding any other provision in this chapter, if a contractor license has been revoked or suspended as a result of an order to remedy a violation of this chapter, the registrar may order payment from the residential contractors' recovery fund to remedy the violation.

A.R.S. § 32-1133.01(A). If the ROC does not disburse payment, however, and the claimant pursues the administrative path, the claimant must timely file a claim with the ROC. *See* A.R.S. § 32-1133.01(G) ("*A claim for payment* from the [Recovery Fund] must be submitted within two years after all proceedings, reviews and appeals connected with the registrar's final order terminate." (emphasis added)). The claimant must also show, among other requirements, that he has "proceeded against any existing bond covering the residential contractor." A.R.S. § 32-1133.01(F).[1]

¶9   Here, the ROC did not unilaterally order disbursement from the Recovery Fund under § 32-1133.01(A). Thus, Flanigan had to proceed against the bond, submit his administrative claim, and prove his eligibility for recovery before the ROC would be obligated to make a payment. *See* A.R.S. § 32-1133.01(F).

### C. Prospective Application

¶10  The ROC determined that the 2019 amendment did not govern Flanigan's claim, a conclusion the superior court affirmed. The court reasoned that the 2019 amendment, as it applied to § 32-1133.01, only governed cases where the ROC revoked or suspended a contractor's license after the amendment's effective date. Flanigan's primary argument on appeal is that the 2019 amendment applies to all § 32-1133.01 claims

---

[1]  The order suspending R&C's license issued July 25, 2019. Section 32-1133.01 did not become effective until August 27, 2019. Laws 2019, Ch. 145, § 17. However, the predecessor to § 32-1133.01, A.R.S. § 32-1154(G) (2018), contained substantially identical language, stating that: "Notwithstanding any other provisions in this chapter, if a contractor's license has been revoked or has been suspended as a result of an order to remedy a violation of this chapter, the registrar may order payment from the residential contractors' recovery fund to remedy the violation. . . . An applicant to the residential contractors' recovery fund pursuant to this subsection must show that the applicant has proceeded against any existing bond . . . ." Because the parties agree this statutory change does not alter the analysis here, we cite the most current statute.

submitted to the ROC after its effective date, regardless of when the contractor was disciplined.

**¶11**       To decide whether either suspension of the contractor's license or the date of submission of the claim to the ROC determines applicability of the 2019 amendment, we must first decide whether the 2019 amendment was a substantive or procedural change. "[A] substantive law creates, defines and regulates rights while a procedural one prescribes the method of enforcing such rights or obtaining redress." *Allen v. Fisher*, 118 Ariz. 95, 96 (App. 1977). A procedural law "does not operate to abridge, enlarge or modify the rules of decision." *Daou v. Harris*, 139 Ariz. 353, 358 (1984) (citation and quotation omitted). Here, the 2019 amendment defined and regulated rights by changing the class of individuals who can access the Recovery Fund. Thus, the 2019 amendment removing the classification requirement is substantive.

**¶12**       Although neither party directly addresses the issue, we must consider whether the 2019 amendment, under its plain language, applies to Flanigan's administrative claim under § 32-1133.01(F). As a general rule, substantive amendments do not apply retroactively absent an explicit retroactivity statement. A.R.S. § 1-244 ("No statute is retroactive unless expressly declared therein."); *State v. Coconino Cnty. Superior Court, Div. II*, 139 Ariz. 422, 427 (1984) ("Unless a statute is expressly declared to be retroactive, it will not govern events that occurred before its effective date."). On the other hand, a substantive amendment can apply to occurrences that predate its enactment, as long as it does not impair rights that have already vested. *Hall v. A.N.R. Freight Sys., Inc.*, 149 Ariz. 130, 139–40 (1986); *see also Cohen v. State*, 121 Ariz. 6, 9 (1978) (Civil statutes "may not be applied retroactively in the absence of a specific provision to that effect. A.R.S. § 1-244. No such prohibition, however, applies to laws that operate on pre-existing conditions, and such laws are not retrospective by their mere relation to antecedent conditions.").

**¶13**       As noted, the 2019 amendment removed the requirement that claimant's property carry certain tax classifications. In essence, this amendment increased the class of individuals eligible to receive proceeds from the Recovery Fund. Nothing in the 2019 amendment indicates the legislature intended to limit recovery only to claims where the contractor's license was suspended before the amendment's effective date. Instead, except for the classification requirement, the procedure for applying to the Recovery Fund remained unchanged. Under § 32-1133.01(F), if the contractor's license is suspended or revoked, the claimant can access the

Recovery Fund by first proceeding against the bond and then filing an administrative claim with the ROC.

¶14 We conclude that the 2019 amendment applies prospectively to all § 32-1133.01(F) claims submitted after its effective date, regardless of when the contractor's license was suspended or revoked. *See Harrison v. Ellis*, 146 Ariz. 222, 225 n.1 (App. 1985) (explaining that a statutory amendment to the Recovery Fund increasing the amount of damages a claimant could recover prospectively applied to civil claims "arising out of acts, representations, transactions, or conduct occurring" before the effective date, but filed with the superior court after the effective date, in part, because the plain language of the amendment did not prohibit such application).

### D. Vested Rights

¶15 Notwithstanding the plain language of the 2019 amendment, the ROC argues the old version of the law applies to Flanigan's administrative claim because it was in effect when any potential right Flanigan had to the Recovery Fund vested. According to the ROC, Flanigan's rights vested when the contractor's license was suspended, and because the contractor's license was suspended before the 2019 amendment, the 2019 amendment does not apply. Generally, a substantive right that has vested may not be retroactively impaired. *Hall*, 149 Ariz. at 139-40. A vested right is "[o]ne which is absolute, complete, and unconditional to the exercise of which no obstacle exists, and which is immediate and perfect in itself not dependent upon a contingency." *Chaffin v. Comm'r of Ariz. Dep't. of Real Estate*, 164 Ariz. 474, 478 (App. 1990) (citation and quotation omitted). On the other hand, a right is merely contingent, and therefore not vested, when it remains dependent on the occurrence of future, uncertain events. *Hall*, 149 Ariz. at 140.

¶16 The ROC argues that because it could unilaterally disburse from the Recovery Fund upon suspending or revoking a contractor's license under § 32-1133.01(A), all rights under § 32-1133.01 immediately vest when a contractor's license is suspended or revoked. To support this argument, the ROC points out that under § 32-1133.01(A), it may make such distributions "[n]otwithstanding any other provision of this chapter," asserting this language "would include Subsection (F)'s requirement to proceed against the bond." Section 32-1133.01(A) grants the ROC authority to disburse funds from the Recovery Fund, at its sole discretion, upon revoking or suspending the contractor's license. That discretion remains until a claimant proceeds against the bond and files an administrative claim

under § 32-1133.01(F). Accordingly, a claimant's *right* to proceeds from the Recovery Fund remains contingent until the claimant files an administrative claim. As noted many times previously, generally, when the exercise of a statutory right is contingent upon the filing of a claim, the right does not vest until the claim is actually filed with the appropriate authority. *See, e.g.*, *Chaffin* 164 Ariz. at 479 (claimant's right to recover from the Real Estate Recovery Fund vests when claimant files a verified complaint in superior court); *Brunet v. Murphy*, 212 Ariz. 534, 537–38, ¶ 13 (App. 2006) (claimant's right to name a particular defendant under the Adult Protective Services Act vests when the claim is filed); *Newman v. Select Specialty Hosp. Ariz., Inc.*, 239 Ariz. 558, 563–64, ¶¶ 20–24 (App. 2016) (plaintiff's right to attorney's fees vested when the complaint is filed).

**¶17** Acknowledging this general rule, the ROC argues that a § 32-1133.01(F) claim is different because it is an administrative, not a civil, remedy. The ROC asserts that under § 32-1133.01(A), once the ROC disciplines the contractor, there are no longer material issues related to eligibility. And because the decision to discipline the contractor comes from the ROC itself, the ROC cannot relitigate eligibility when the claimant files an administrative claim under § 32-1133.01(F). As explained by the ROC, there is no obstacle preventing the claimant from immediately exercising his rights.

**¶18** The ROC, however, has confused the rights at issue. The only right of the claimant that vests when the contractor's license is suspended or revoked is the right to submit an administrative claim with the ROC for payment under the Recovery Fund; the right to receive payment from the Recovery Fund does not vest until the administrative claim is actually filed. *See Hall*, 149 Ariz. at 140 ("[A] right vests only when it is actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust."); *cf. Wilson v. Ariz. Registrar of Contractors*, 161 Ariz. 617, 619 (App. 1989) (noting that under the civil recovery provisions of the Recovery Fund, the right to assert a claim is different than the right to receive payment).

**¶19** Moreover, even though the ROC is responsible for both disciplining the contractor and administering the Recovery Fund, this does not change the fact that a claimant's access to the Recovery Fund remains contingent upon first proceeding on the bond, and then submitting an administrative claim under § 32-1133.01(F). Even though both are handled by the same agency, lodging a complaint against a contractor and filing an administrative claim are separate proceedings. Further, the revocation or suspension of the contractor's license does not guarantee the claimant's

administrative claim will ultimately be granted even when a claim is filed. In the normal case, under either version of the statutes, factual questions remain regarding eligibility that may prevent payment. A.R.S. §§ 32-1131(3)(a) (2017); 32-1132(B)(1) (2019).

**¶20** The ROC concedes that the claimant will still have to prove he has "the right type of property under A.R.S. § 32-1132 and the appropriate amount of the award under A.R.S. § 32-1132.01." But it contends these outstanding factual issues are not obstacles to payment because "homeowners are in the position to resolve the ultimate qualification or amount-of-recovery issues." However, the fact the claimant is more likely to possess the evidence that resolves these issues is immaterial to the question of whether his rights remain contingent.

## CONCLUSION

**¶21** We hold that the 2019 amendment governs Flanigan's administrative claim, and therefore the prior version of § 32-1131, requiring the damaged property to carry certain tax classifications, does not preclude Flanigan from accessing the Recovery Fund. Accordingly, we reverse the superior court's order and remand for further proceedings consistent herewith. Because Flanigan does not demonstrate where in the proceedings before this appeal he unsuccessfully requested attorneys' fees, we deny his request for fees under A.R.S. § 41-1007(E) (authorizing discretionary fee award "[i]f fees and other costs were denied by the [ALJ] because the party was not the prevailing party but the party prevails on appeal"). As the successful party on appeal, Flanigan is awarded taxable costs upon compliance with ARCAP 21.

